GENERAL STEEL PRODUCTS COM-
PANY, Inc., Plaintiff,

v.

Anton LORENZ, Defendant.

No. 9914–M.

United States District Court
S. D. Florida.

Feb. 23, 1962.

William E. Schuyler, Jr., Francis C. Browne, Andrew B. Beveridge and Joseph A. DeGrandi, Washington, D. C., Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, Fla., of counsel, for plaintiff.

Edward F. Levy, of Amster & Levy, New York City, Smathers & Thompson, Miami, Fla., of counsel, for defendant.

McRAE, District Judge.

PLEADINGS

On April 20, 1960, Plaintiff filed a Complaint for a judgment declaring it does not infringe any claim of Patent No. 2,918,113; a judgment declaring Patent No. 2,918,113 invalid; an injunction restraining Defendant from asserting that any claim of Patent No. 2,918,113 has been or is being infringed by Plaintiff or Plaintiff's customers; an award of damages sustained by Plaintiff as a result of Defendant's assertions of infringement; and an assessment of costs and attorney's fees against Defendant.

On June 15, 1960, Defendant filed Answer praying that the Complaint be dismissed with costs and attorney's fees; and counterclaiming for a judgment that Patents Nos. 2,918,113, 2,950,509, and 2,950,510 are valid and have been in-fringed by Plaintiff; for an injunction restraining further infringement by Plaintiff; for an accounting of profits and damages occasioned by Plaintiff's infringement; for a judgment that certain acts of Plaintiff constitute unfair competition against Defendant and a breach of contract; for an injunction restraining Plaintiff from committing acts of unfair competition complained of; and for an award of damages occasioned by the acts of unfair competition and by breach of contract.

On September 28, 1960, Plaintiff filed its Answer to Defendant's counterclaim denying validity and denying infringement of Patents Nos. 2,918,113, 2,950,-509 and 2,950,510, denying that any acts of Plaintiff constituted unfair competition with Defendant denying the existence of and any breach of contract, and charging Defendant with misuse of patents.

By agreement of the parties as set forth in the Pretrial Stipulation, Defendant asserts against Plaintiff's 87–TV Fixture Claims 1, 2, 12 and 13 of Lorenz Patent No. 2,918,113; Claims 1, 2, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,-509 and Claims 1, 2, 6, 7, 8, 9 and 10 of Schliephacke Patent No. 2,940,510. Defendant asserts against Plaintiff's 86–TV patent Claims 1, 2, 10, 14 and 16 of Fletcher Patent No. 2,940,509 and no claims of Lorenz Patent No. 2,918,113 and no claims of Schliephacke Patent No. 2,940,510.

JURISDICTION

*Findings of Fact*

1. Plaintiff, General Steel Products Company, Inc., is a North Carolina corporation having its principal place of business at 421 Tyron Street, High Point, North Carolina. (Pretrial Stipulation III–1).

2. Defendant, Anton Lorenz is an individual residing in Ocean Ridge, Boynton Beach, Florida. (Pretrial Stipulation III–2).

3. Defendant is the owner of the three patents in suit. (Pretrial Stipulation III–3).

4. Prior to institution of this action Defendant notified Plaintiff that Plaintiff was infringing Patent No. 2,918,113. (Pretrial Stipulation III–6).

### Conclusions of Law

I. This is a case of actual controversy within the meaning of 28 U.S.C. § 2201 and the Court having jurisdiction of the subject matter and the parties, has jurisdiction of Defendant's counterclaims under 28 U.S.C. § 1338.

LORENZ PATENT NO. 2,918,113 IS INVALID BECAUSE IT IS BASED ON AN INOPERATIVE DISCLOSURE

### Findings of Fact

5. Defendant's expert testified that templates made in accordance with Figs. 1 and 2 of Lorenz Patent No. 2,918,113 were inoperative. (R. p. 482, 483, 484).

6. Defendant's expert testified that templates made in accordance with Figs. 3, 4 and 5 of Lorenz Patent No. 2,918,113 were inoperative. (R. p. 509, 510).

7. Defendant's expert testified that templates made in accordance with Figs. 9, 10 and 11 of Lorenz Patent No. 2,918,113 were inoperative. (R. p. 516, 517).

8. Defendant's expert testified that some modification of each embodiment shown in Lorenz Patent No. 2,918,113 would be necessary in order to make the chair operate as intended by Lorenz. (R. p. 514–521).

9. Defendant's initial development of multiple position chairs is shown in his Patent No. 2,173,283 (R. p. 52, 53) issued September 9, 1939 (P.Ex.2); it did not operate automatically. (R. p. 53).

10. Defendant testified that his patent in suit, No. 2,918,113, solved the problem of actuating the leg rest linkage. (R. p. 59, 60).

11. Models made by Plaintiff in accordance with each of the five embodiments disclosed in Lorenz Patent No. 2,918,113 (P. Ex. 33–37 and photographs showing various positions of the models, P's Exs. 38–42) failed to operate as stated in the patent. (R. p. 875–893).

12. Plaintiff's witness Mizelle made the models of each of the five embodiments disclosed in Lorenz Patent No. 2,918,113 by following the teaching of the patent. (R. p. 872, 914).

13. Plaintiff's witness Mizelle testified that the models could not be made to operate satisfactorily by the addition of a friction device to control the sequence of operation. (R. p. 893).

14. Plaintiff's witness Mizelle modified the embodiment shown in Figs. 9, 10 and 11 (P's Exs. 36 and 47) with substitute links to unlock the leg rest mechanism, and the modified structure still did not operate in the manner disclosed by Lorenz. (R. p. 901–904).

15. Plaintiff's expert Flanigan testified that chairs shown in the Lorenz patent could not readily be modified to work and the addition of friction devices to any of the embodiments disclosed in Lorenz Patent No. 2,918,113 would not make the devices operative. (R. p. 938–941).

16. Defendant's expert witness speculated as to how chairs made according to the disclosure of Lorenz Patent No. 2,918,113 could be modified to control proper sequencing, but this testimony was in general terms without proof of satisfactory operation. (R. p. 484–526, 562–565).

17. Defendant constructed a chair according to Figs. 3, 4 and 5 of Lorenz Patent No. 2,918,113 with changes in dimensions of the links and the placement of the pivots (R. p. 1074) and the addition of a friction device including "a slotted link and two large nylon friction washers with a spring and wing nut assembly" (R. p. 1088) in an effort to make the chair operate but the chair was unsatisfactory. (R. p. 1075, 1090).

18. The friction assembly had never been used previously by Defendant in a commercial chair. (R. p. 1088).

19. Defendant did not try to make any other Figure of the Lorenz patent operate. (R. p. 1090).

20. Lorenz Patent No. 2,918,113 does not suggest the addition of a slotted link

or a friction device to control the sequency of the chair of Fig. 3.

21. Defendant does not engage in the manufacture of reclining chairs or reclining chair fixtures for sale. (Pretrial Stipulation III–24).

22. There is no evidence that fixtures or reclining chairs shown in Lorenz Patent No. 2,918,113 have been made or sold commercially by Defendant's licensees.

23. Defendant has not granted any license under Lorenz Patent No. 2,918,-113. (R. p. 183).

24. Alex Katz, President of Supersagless Spring Corporation, testified that his corporation was not licensed under the Lorenz Patent 2,918,113. (R. p. 245).

25. Defendant testified that he does not receive royalty from any licenses for use of the invention in Lorenz Patent No. 2,918,113. (R. p. 179–182).

26. Each of Defendant's licensees is licensed under a patent or a patent application other than Lorenz Patent No. 2,918,113 or the remaining two patents in suit. (D.Ex. 179–182).

27. There is no evidence that any commercial success of TV Reclining Chairs is attributable to the invention of the Lorenz Patent No. 2,918,113.

28. The application for Patent No. 2,918,113 is stated to be a continuation-in-part of earlier Application Serial No. 526,635 filed August 5, 1955, now Patent No. 2,948,330 (P.Ex. 14) which is allegedly a division of Application Serial No. 309,272 filed September 12, 1952, now Patent No. 2,746,521. (P.Ex. 15).

29. Neither of these earlier applications nor the application for Patent No. 2,918,113 suggested any modification for controlling the sequence of the operation of the chairs to make them work as intended by Lorenz.

### Conclusions of Law

■ II. Utility is absent from devices which cannot be used to perform their specific functions, and patents for such subjects are therefore void. This rule applies even to cases in which, by simply adding new elements to useless contrivances, highly useful inventions are produced. (Walker on Patents, Section 66, Deller's Edition, page 313).

■ III. The term "useful," as contained in the patent law, when applied to a machine, means that the machine will accomplish the purpose practically when applied in industry. It is to be given a practical and not a speculative meaning. It means that the machine will work and accomplish the purposes set forth in the specification. Even if the machine can be made to accomplish the purposes specified, it is not useful within the meaning of the patent law, if from its inherent nature it will accomplish the purpose only to such a restricted extent as to make its use in industry prohibitive. Hartford Empire Co. v. Obear-Nester Glass Co., (CCA–8 1934) 71 F.2d 539, 544.

■ IV. When a party proves through its witnesses that each of the five embodiments of a patent constructed in accordance with the patent are inoperative, it is not sufficient for the party asserting the patent to have its witnesses merely disagree and state that they could make the embodiments operative, but they must show in detail how they would make them operative. Manhattan Book Casing Mach. Co. v. E. C. Fuller Co., 2 Cir., 274 F. 964, affirmed CCA–2, 204 F. 286.

■ V. Lorenz Patent No. 2,918,113 fails to disclose a useful machine within the meaning of 35 U.S.C. § 101 and is therefore invalid and void.

■ VI. Specification and drawings of Lorenz Patent No. 2,918,113 fail to comply with 35 U.S.C. § 112 in that such specification and drawings do not contain a written description of the invention and the manner and process of making and using it in such full, clear and concise and exact terms as to enable any person skilled in the art to which it pertains to make and use the same; there-

fore, Lorenz Patent No. 2,918,113 is invalid as it is based upon an inadequate disclosure.

■ VII. Commercial success of TV chairs has little weight in considering the validity of Lorenz Patent No. 2,918,-113 because there is no evidence that the patented device practiced by itself would have had any success. Halliburton Oil Well Cementing Co. v. Schlumberger Well Surveying Corp., (CCA–5 1942) 130 F.2d 589.

LORENZ PATENT INVALID IN VIEW OF PRIOR LORENZ BRITISH PATENT NO. 724,643 (P. Ex. 32)

### Findings of Fact

30. The application for the Patent No. 2,918,113 is stated to be a continuation-in-part of earlier Application Serial No. 526,635 filed August 5, 1955, now Patent No. 2,948,330 (P.Ex. 14) which was allegedly a division of Application Serial No. 309,272 filed September 12, 1952, which is now United States Patent No. 2,746,521 (P.Ex. 15).

31. Fig. 8 of the drawing of Lorenz Patent Application Serial No. 309,272 as filed in the Patent Office on September 12, 1952 (P.Ex. 15) is a combination of the views illustrated in Figs. 1 and 2 of Lorenz Patent No. 2,918,113 (R.p. 1058).

32. Other than Fig. 8, and a brief description thereof, Application file Serial No. 309,272 (P.Ex. 15) does not contain any other disclosure in common with Lorenz Patent No. 2,918,113.

33. The chair shown in Figs. 1 and 2 of Lorenz Patent No. 2,918,113 and in said Fig. 8 of Application Serial No. 309,272 is inoperative. (P.Exs. 33 and 38 and R.p. 875–879).

34. Defendant has not offered any evidence as to how the chair shown in Fig. 1 of Lorenz Patent No. 2,918,113 could be modified to work satisfactorily as described in the patent.

35. Plaintiff's expert Flanigan testified that the chair shown in Fig. 1 of Lorenz Patent No. 2,918,113 could not readily be modified to work and the addition of a friction device thereto would not make the device operative. (R.p. 938, 939).

36. · British Patent No. 724,643 issued to Anton Lorenz on February 23, 1955, on an application filed in Great Britain by said Anton Lorenz on October 20, 1953 (P.Ex. 32).

37. British Patent No. 724,643 (P. Ex. 32) discloses in Fig. 16 and describes a chair whose structure is identical to that of Figs. 1 and 2 of Lorenz Patent No. 2,918,113.

38. Claims 1, 2, 12, and 13 of Lorenz Patent No. 2,918,113 read fully on the embodiment illustrated in Fig. 16 of British Patent No. 724,643. (P.Ex. 32).

### Conclusions of Law

■ VIII. An applicant in a continuation-in-part application is not entitled to the benefit of the filing date of an earlier patent application if the disclosure in the earlier application is inoperative. Lavin v. Pierotti, 129 F.2d 883, 29 CCPA 1235 (1942); Philip A. Hunt Co. v. Mallinckrodt Chemical Works, CA–2, 177 F.2d 583.

IX. Since the only disclosure in Application Serial No. 309,272 in common with Lorenz Patent No. 2,918,113 is inoperative; Defendant cannot rely upon the filing date of September 12, 1952 for said Application Serial No. 309,272; Defendant is, therefore, restricted to either the filing date of August 5, 1955, for Application Serial No. 526,635 or the filing date of June 11, 1958, for the application for Patent No. 2,918,113.

■ X. Lorenz Patent No. 2,918,-113 is invalid under 35 U.S.C. § 102(d) because the invention was first patented or caused to be patented by the Applicant in Great Britain on an application filed October 20, 1953, more than twelve months before the filing on August 5, 1955 or June 11, 1958, of the application for Patent No. 2,918,113 in the United States.

FLETCHER PATENT NO. 2,940,509 INVALID IN VIEW OF LORENZ PATENT NO. 2,918,113

*Findings of Fact*

39. The application for Fletcher Patent No. 2,940,509 was filed in the United States Patent Office on July 10, 1958. The patent application for Lorenz Patent No. 2,918,113 was filed in the United States Patent Office on June 11, 1958.

40. In Plaintiff's Request for Admissions Under Rule 36, 28 U.S.C.A., dated March 24, 1961, Plaintiff made the following request:

"15. Defendant, Anton Lorenz, made the fixture shown in Fig. 9 of the Lorenz Patent No. 2,918,113 before Peter S. Fletcher made the invention shown in Patent No. 2,940,- 509."

Defendant made no response to said Request for Admission No. 15.

41. Defendant gave conflicting testimony concerning the sequence of his design of the chair shown as Figs. 9 to 14 inclusive of Lorenz Patent No. 2,918,- 113 and the alleged invention disclosed in Fletcher Patent No. 2,940,509. (R.p. 156 to 165).

42. Each element and each function defined in Claims 1, 10 and 11 of Fletcher Patent No. 2,940,509 are found in the chair disclosed in Figs. 9, 10 and 11 of Lorenz Patent No. 2,918,113 (R.p. 521– 524) and are also found in the chair disclosed in Figs. 12, 13 and 14 of Lorenz Patent No. 2,918,113. (R.p. 543–546).

43. Each element and each function defined in Claims 14 and 16 of Fletcher Patent No. 2,940,509 are found in the chair disclosed in Figs. 12, 13 and 14 of Lorenz Patent No. 2,918,113. (R.p. 543–546).

44. Each element and each function defined in Claim 2 of Fletcher Patent No. 2,940,509 are found in the chair disclosed in Figs. 12, 13 and 14 of Lorenz Patent No. 2,918,113 with the exception of the limitation reading "one of said guiding means including a pair of spaced guiding elements movably connecting spaced points on said seat to said support and adapted to produce a compound rearward movement of the body supporting unit,". (R.p. 543–546).

45. Defendant's expert testified that a slotted link connected between pivots 444 and 454 would be the equivalent of the chair shown in Figs. 12, 13 and 14 of Lorenz Patent No. 2,918,113. (R.p. 541, 565).

46. With the substitution of the equivalent link between pivots 444 and 454 of the chair shown in Figs. 12, 13 and 14 of Lorenz Patent No. 2,918,113 that chair meets every element and every function defined in Claim 2 of Fletcher Patent No. 2,940,509.

47. Lorenz Patent No. 2,918,113 in Figs. 9, 10 and 11, and/or Figs. 12, 13 and 14, and the description of those Figures, discloses the equivalent of the construction defined in each of Claims 1, 2, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509.

*Conclusions of Law*

XI. A patent is invalid if the invention was described in a patent granted on an application for a patent by another filed in the United States before the invention by the applicant for patent. 35 U.S.C. § 102(e); Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651.

XII. Claims 1, 2, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 are invalid because the construction defined in those claims was described in Lorenz Patent No. 2,918,113 granted on an application filed by Lorenz in the United States before the invention by Fletcher.

XIII. In suits for patent infringement, one who seeks to carry the date of his invention back of the date of anticipating patents must assume the burden of proof and establish his claim by clear and unequivocal evidence. American Lecithin Co. v. Warfield Co., (CCA–7 1942) 128 F.2d 522; Thompson et al. v. American Tobacco Co. (CCA–4 1949) 174 F.2d 773; McIlvaine Patent

Corp. v. Walgreen Co., (CCA–7 1943) 138 F.2d 177.

■ XIV. It is essential to the validity of a patent that it shall be granted on the application of the first inventor whether the patent is issued to him or to his assignee. A patent applied for by one who is not the inventor is unauthorized by law and void whether taken out in the name of the applicant or of any assignee of his; it confers no right as against the public. Kennedy v. Hazelton, 128 U.S. 667, 9 S.Ct. 202, 32 L.Ed. 576.

■ XV. Defendant's failure to respond to Plaintiff's Request for Admission No. 15 constitutes an admission of the facts specified in said Request No. 15 (Rule 36 of Federal Rules of Civil Procedure, 28 U.S.C.A.).

XVI. The record in this case is insufficient to establish that Fletcher made the invention defined in the claims of Patent No. 2,940,509 prior to June 11, 1958, the filing date of the application for Lorenz Patent No. 2,918,113.

XVII. Filing of the application for Lorenz Patent No. 2,918,113 on June 11, 1958, establishes invention by Lorenz as of June 11, 1958, of the subject matter disclosed in Lorenz Patent No. 2,918,113.

XVIII. Claims 1, 2, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 are invalid under 35 U.S.C. § 102(e) because the invention defined in the claims of the Fletcher patent was described in Patent No. 2,918,113 granted on an application filed by Lorenz in the United States before the invention by Fletcher.

XIX. Claims 1, 2, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 are invalid under 35 U.S.C. § 102(a) because the invention was known by Lorenz in this country before the invention by Fletcher.

XX. Claims 1, 2, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 are invalid under 35 U.S.C. § 102(f) because Fletcher himself did not invent the subject matter sought to be patented.

XXI. Claims 1, 2, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 are invalid under 35 U.S.C. § 102(g) because before Fletcher's invention thereof the invention was made in this country by Lorenz who had not abandoned, suppressed or concealed it.

■ XXII. Assignment of Fletcher Patent No. 2,940,509 to Lorenz cannot cure the defect in the patent, based upon an application which failed to comply with 35 U.S.C. § 102.

FLETCHER PATENT NO. 2,940,509 IS INVALID IN VIEW OF CURTIS PATENT NO. 2,798,534

*Findings of Fact*

48. Each element of Claims 1, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 is found in the disclosure of Figs. 7, 8 and 9 of Curtis Patent No. 2,798,534. (D.Ex. 23) (R.p. 658, 970–984 and 987–992, 1151).

49. A model (P.Ex. 44) made according to said Figs. 7, 8 and 9 of Curtis Patent No. 2,798,534 (P.Ex. 23) has a half reclining position approximating the position of the chair shown in Fig. 13 of Curtis Patent No. 2,798,534 (P. Ex. 46–B) (R.p. 1046).

50. The half reclined position of the chair shown in Figs. 7, 8 and 9 of Curtis Patent No. 2,798,534 (P. Ex. 23 and 46B) where the arm 82 engages surface 83 corresponds approximately to the "intermediate, rearwardly tilted position" or the "tilted sitting position" specified in the claims of Fletcher Patent No. 2,940,509. (R. p. 985).

51. Each element of Claim 2 and each function of Claim 2 of Fletcher Patent No. 2,940,509 are found in the chair disclosed in Curtis Patent No. 2,798,534, Figs. 7, 8 and 9 with the exception of the clause reading: "One of said guiding means including a pair of spaced guiding elements movably connecting spaced points on said seat to said support and adapted to produce a compound rearward movement of the body supporting unit." (R. p. 984–987).

52. Fletcher Patent No. 2,940,509 (D. Ex. 2) equates all of the four embodiments of the invention shown therein

(R. p. 217) and fails to specify any advantage for the pair of spaced guiding elements specified in Claim 2.

53. Defendant's expert testified that one skilled in the art would use a parallel linkage arrangement of spaced guiding elements to accomplish a flat motion where it was impractical to use a long radius. (R. p. 595, 596).

54. Curtis Patent No. 2,978,534 (P. Ex. 23) issued on July 9, 1957, more than one year before the application for Fletcher Patent No. 2,940,509 on July 10, 1958. (D. Ex. 2).

55. The construction defined in Claim 2 of Fletcher Patent No. 2,940,509 is the equivalent of the construction disclosed in Figs. 7, 8 and 9 of Curtis Patent No. 2,798,534 which issued July 9, 1957, more than one year prior to the application for Fletcher Patent No. 2,940,509.

56. In the application for Fletcher Patent No. 2,940,509 as filed on July 10, 1958, the three positions of the chair were described as sitting position, intermediate tilted position, and fully tilted position. By an amendment filed March 29, 1960, the application was amended to describe these positions as an *upright* sitting position, and intermediate tilted *sitting* position, and a fully tilted position. (P. Ex. 16).

57. In an amendment filed April 17, 1959 in the Fletcher application (P. Ex. 18), the following argument was presented with respect to Claims 10 and 11 of the patent (Claims 17 and 18 of the application):

"Claims 17 and 18 further define first and second guiding means which control the movement of the body-supporting unit, the first guiding means providing a first instantaneous center of rotation and the second guiding means providing a second instantaneous center of rotation, with the unit moving *rearwardly* about both centers of rotation. In Gilchrist [Gilchrist British Patent 23927 (P. Ex. 30) issued August 13, 1914, cited by the Examiner], the chair is adjusted continuously first in a forward direction and then a rearward direction, or vice versa. There are not two instantaneous centers of rotation for rearward movement. Claims 17 and 18 in addition define the centers of rotation as being independent of each other with the second center being located rearwardly of the first. This structure is entirely absent in Gilchrist. The claims then go on to define blocking means which limits movement of the first guiding means, halts further movement of the unit about the first instantaneous center of rotation and constrains movement of the unit to movement about the second instantaneous center of rotation. Again, no such blocking means is shown or suggested in Gilchrist. No movement of any guiding means is blocked in the Gilchrist patent to permit further movement by the other guiding means."

58. In an amendment filed March 29, 1960 in the Fletcher application (P. Ex. 18) the following argument was presented with respect to Claims 14 and 16 of the patent, Claims 25 and 27 respectively of the application:

"Claims 10, 12, 14 and 16 have been cancelled and Claims 25, 26 and 27 added. These new claims are drawn along the lines of allowed Claim 17 [Patent Claim 10] but contain structural limitations expressed in more specific terms in allowed Claim 5 [Patent Claim 2]. Claim 25 [Patent Claim 14] recites that the first instantaneous center of rotation is a movable center of rotation, thereby including said structure as shown in Figs. 3 and 7 wherein the first motion phase is a compound movement. Where, for example, front and rear guide links are provided to guide the body-supporting unit during the first motion phase, as shown in Fig. 3, the instantaneous center of rotation will move forwardly, or in a direction opposite the movement of the body-supporting unit. * * *

528

"Claim 27 [Patent Claim 16] recites that the first instantaneous center of rotation is movable and the second instantaneous center is fixed, as shown specifically in Fig. 3. This claim also defines the leg-rest and its actuating means."

59. Curtis Patent No. 2,798,534 (P. Ex. 23) was not cited by the Patent Office Examiner during the prosecution of the application for Fletcher Patent No. 2,940,509. (D. Ex. 2 and P. Ex. 18).

60. Curtis Patent No. 2,798,534 is not classified by the Patent Office in Class 155 Subclass 106 where the three patents in suit are classified. (P. Ex. 50).

61. Alex Katz, President of Supersagless Spring Corporation, testified that his corporation was not licensed under the Fletcher patent 2,940,509. (R. p. 245).

62. Defendant testified that he does not receive royalty from any licensees for use of the invention in Fletcher patent 2,940,509. (R. p. 179–182).

63. Each of Defendant's licensees is licensed under a patent or a patent application other than Fletcher patent 2,940,509 or the remaining two patents in suit. (D. Ex. 179–182).

64. There is no evidence that any commercial success of TV Reclining Chairs is attributable to the invention of the Fletcher patent 2,940,509.

### Conclusions of Law

XXIII. The presumption of validity of a patent as provided in 35 U.S.C. § 282 is greatly weakened where the Patent Office failed to consider pertinent art. Rosaire v. Baroid Sales Division, National Lead Company, (CCA–5 1955) 218 F.2d 72.

XXIV. Had Curtis Patent No. 2,978,534 been cited during the prosecution of the application for Fletcher Patent No. 2,940,509, the argument could not have been made in the Fletcher application that the reference failed to show two instantaneous centers of rotation effec-tive during rearward movement of the unit.

XXV. The argument set forth on behalf of Fletcher in the amendment filed April 17, 1959, would fail to distinguish Fletcher's claims because Curtis Patent No. 2,798,534 contains every element and function mentioned in the argument.

XXVI. Curtis Patent No. 2,798,534 supplies the exact construction of first and second guiding means for moving the chair about first and second instantaneous centers with blocking means limiting the first movement and constraining further rearward movement to the second, so Curtis Patent No. 2,798,534 contains the very elements relied upon by Fletcher to distinguish from the patents cited by the Examiner.

XXVII. Claims 1, 2, 10, 11, 14 and 16 of Fletcher Patent No. 2,940,509 are invalid under 35 U.S.C. § 102(b) because the alleged invention defined in said claims of Fletcher Patent No. 2,940,509 was patented or described in Curtis Patent No. 2,798,534 issued in the United States more than one year prior to the application of Fletcher for Patent No. 2,940,509.

XXVIII. Claims 1, 2, 10, 11 14 and 16 of Fletcher Patent No. 2,940,509 are invalid under 35 U.S.C. § 103 because the differences between the subject matter defined in the claims of the Fletcher patent and the prior art as represented by Curtis Patent No. 2,798,534 are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. The Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Fluor Corporation v. Gulf Interstate Gas Co., (CCA–5 1958) 259 F.2d 405.

XXIX. Commercial success of TV chairs has little weight in considering the validity of Fletcher patent No. 2,-940,509 because there is no evidence that the patented device practiced by itself

would have had any success. Halliburton Oil Well Cementing Co., v. Schlumberger Well Surveying Corp., (CCA–5 1942) 130 F.2d 589.

## SCHLIEPHACKE PATENT NO. 2,940,510 INVALID IN VIEW OF LORENZ PATENT NO. 2,918,113

### Findings of Fact

65. Lorenz Patent No. 2,918,113 (D. Ex. 1) issued on an application filed in the United States Patent Office on June 11, 1958.

66. Schliephacke Patent No. 2,940,510 (D. Ex. 3) issued on an application filed in the United States Patent Office on October 28, 1958.

67. No evidence was offered by Defendant to show that Schliephacke made the invention defined in the claims of the Schliephacke patent prior to the filing of the application for the patent on October 28, 1958.

68. Defendant's expert testified that a link with a sliding connection, i. e., a link embodying a slot at its lower end, could be applied by one skilled in the art between pivots 454 and 444 of the chair disclosed in Figs. 12, 13 and 14 of Lorenz patent 2,918,113 (D. Ex. 1) to improve operation of the chair disclosed in those Figures. (R. p. 541, 542; 565).

69. With a link pivoted at pivot 454 of the seat of the chair disclosed in Figs. 12, 13 and 14 of Lorenz Patent No. 2,918,113 and having a sliding connection, because of the slot at its lower end, with pivot 444, those Lorenz Figures correspond in each element and function to the chair described and claimed in Schliephacke Patent No. 2,940,510.

70. Addition of a link having a pivotal connection at 454 to the seat of the chair shown in Lorenz Patent No. 2,918,113 and a sliding connection (due to the slot in the bottom of the link) with pivot 444 of those Figures, would have been obvious to a person having ordinary skill in the art of reclining chairs at the time the invention of Schliephacke Patent No. 2,940,510 was made. (R. p. 565).

### Conclusions of Law

XXX. A patent is invalid if the invention was described in a patent granted on an application for a patent by another filed in the United States before the invention by the applicant for patent (35 U.S.C. § 102(e); Alexander Milburn v. Davis-Bournonville Company, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651.

XXXI. Claims of Schliephacke Patent No. 2,940,510 are invalid because the construction disclosed in the Schliephacke was described in Lorenz Patent No. 2,918,113 granted on an application filed by Lorenz in the United States before the invention by Schliephacke. 35 U.S.C. § 102(e).

XXXII. Filing of the application by Lorenz for Patent No. 2,918,113 on June 11, 1958, establishes invention by Lorenz as of June 11, 1958, of the subject matter disclosed in Lorenz Patent No. 2,918,113.

XXXIII. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 102(e) because the alleged invention disclosed in the Schliephacke patent was described in Patent No. 2,918,113 granted on an application filed by Lorenz in the United States before the invention by Schliephacke.

XXXIV. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 102(b) because the invention was known to Lorenz in this country before the invention by Schliephacke.

XXXV. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 102(f) because Schliephacke himself did not invent the subject matter sought to be patented.

XXXVI. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 102(g) because before Schliephacke's invention thereof the invention was made in this country by Lorenz who had not abandoned, suppressed or concealed it.

XXXVII. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 103 because such differences

as exist between the subject matter sought to be patented and the chair disclosed in Figs. 12, 13 and 14 of Lorenz Patent No. 2,918,113 would have been obvious to a person having ordinary skill in the art at the time the alleged invention was made by Schliephacke.

## SCHLIEPHACKE PATENT NO. 2,940,-510 INVALID IN VIEW OF FLETCHER PATENT NO. 2,940,509

### Findings of Fact

71. Fletcher Patent No. 2,940,509 (D. Ex. 2) issued on an application filed in the United States Patent Office on July 10, 1958. (P. Ex. 18).

72. Schliephacke Patent No. 2,940,-510 (D. Ex. 3) issued on an application filed in the United States Patent Office on October 28, 1958 (P. Ex. 17).

73. No evidence was presented by Defendant to establish that Schliephacke made his invention on any date prior to October 28, 1958, the date on which the application for the Schliephacke patent was filed.

74. Defendant's expert testified that links could be substituted for the pin and slot cam arrangements disclosed in Figs. 7 and 8 of Fletcher Patent No. 2,940,509 (R. p. 401; 451; 550; 566–570).

75. Defendant's expert testified that pin 335 and slot 339 disclosed in Figs. 7 and 8 of Fletcher Patent No. 2,940,509 were the equivalent of a link having one end pivoted at 335 and the other end pivotally connected to the chair frame at the center of the circle on which the arcuate slot 339 would lie. (R. p. 401, 551, 552, 566, 567).

76. Defendant's expert testified that the equivalent construction of the pin 333 and slots 337a and 337b in Figs. 7 and 8 of Fletcher Patent No. 2,940,509 would be a link having one end pivoted to pin 333 and the other end pivoted to the chair frame at the center of a circle on which the arcuate slot 337a would lie, with a slot in either end, preferably the bottom, of the link to perform the equivalent function of slot 337b. (R. p. 401; 550, 551; 566–570).

77. Testimony of Defendant's expert indicates that the construction of Schliephacke Patent No. 2,940,510 is the equivalent of the construction disclosed in Figs. 7 and 8 of Fletcher Patent No. 2,940,509. (R. p. 401; 451; 550, 551; 566–570).

78. Substitution of links, one having a slotted connection, for the pin and cam slots disclosed in Figs. 7 and 8 of Fletcher Patent No. 2,940,509 would have been obvious to a person having ordinary skill in the art of reclining chairs at the time the alleged invention of Schliephacke was made. (R. p. 568).

79. Alex Katz, President of Supersagless Spring Corporation, testified that his corporation was not licensed under Schliephacke patent 2,940,510. (R. p. 245).

80. Defendant testified that he does not receive royalty from any licensees for use of the invention in Schliephacke patent 2,940,510. (R. p. 179–182).

81. Each of Defendant's licensees is licensed under a patent or a patent application other than Schliephacke patent 2,940,510 or the remaining two patents in suit. (D. Ex. 79–182).

82. There is no evidence that any commercial success of TV Reclining Chairs is attributable to the invention of Schliephacke patent 2,940,510.

### Conclusions of Law

XXXVIII. A patent is invalid if the invention was described in a patent granted on an application for a patent by another filed in the United States before the invention by the applicant for a patent. 35 U.S.C. § 102(a) ; Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651.

XXXIX. Filing of the application for Fletcher Patent No. 2,940,509 on July 10, 1958, established invention by Fletcher as of July 10, 1958, of the subject matter disclosed in Fletcher Patent No. 2,940,509.

XL. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C.

§ 102(e) because the invention of the Schliephacke patent was described in Fletcher Patent No. 2,940,509 granted on an application filed by Fletcher in the United States before the invention by Schliephacke.

XLI. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 102(a) because the invention was known by Fletcher in this country before the invention by Schliephacke.

XLII. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 102(f) because Schliephacke himself did not invent the subject matter sought to be patented.

XLIII. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 102(g) because before Schliephacke's invention thereof the invention was made in this country by Fletcher who had not abandoned, suppressed or concealed it.

XLIV. Claims of Schliephacke Patent No. 2,940,510 are invalid under 35 U.S.C. § 103 because the differences between the subject matter sought to be patented and the disclosure of Figs. 7 and 8 of Fletcher Patent No. 2,940,509 would have been obvious to a person having ordinary skill in the art of reclining chairs at the time the alleged invention was made by Schliephacke.

XLV. Commercial success of TV chairs has little weight in considering the validity of Schliephacke patent No. 2,940,510 because there is no evidence that the patented device practiced by itself would have had any success. Halliburton Oil Well Cementing Co., v. Schlumberger Well Surveying Corp., (CCA–51942) 130 F.2d 589.

PLAINTIFF'S 87–TV FIXTURE DOES NOT INFRINGE LORENZ PATENT NO. 2,918,113

*Findings of Fact*

83. Defendant's expert testified that Figs. 1 and 2 of Lorenz Patent No. 2,-918,113 (D.Ex.1) is the closest to Plaintiff's 87–TV Fixture (R.p. 596).

84. Lorenz Patent No. 2,918,113 identifies auxiliary pivot 34 as confined within arcuate slot 36 (Col. 3, L. 60, 66).

85. Auxiliary pivot 34 performs no function during the movement of the chair from the full line position of Figs. 2 to the dotted line of Fig. 2 of Lorenz Patent No. 2,918,113. (R.p. 944, 945).

86. Defendant's expert testified that the auxiliary pivot 34 and slot 36 constitute a phantom carrier link having a fixed pivot at 22 for carrying the auxiliary pivot 34 in a manner corresponding to the carrier links 132, 232, 332 and 432 in the other Figures of Lorenz Patent No. 2,918,113. (R.p. 601; 603).

87. Defendant's expert testified that blocking member 62 locks links of the leg-rest control linkage against movement relative to each other during movement of the chair from the position shown in full line of Fig. 2 to the position shown in the dotted line of Fig. 2 of Lorenz Patent No. 2,918,113. (R.p. 606).

88. Plaintiff's 87–TV Fixture has a pin and cam slot for controlling operation of the leg-rest linkage. (R.p. 624–627).

89. The cam slot is in one arm of a bellcrank lever the motion of which is controlled by the pin during all phases of movement of a chair embodying the 87–TV Fixture. (R.p. 620; 624–627; 952, 953).

90. The pin in Plaintiff's Exhibit 6 of the 87–TV Fixture is effective to control the position of the leg-rest linkage and the leg-rest during movement of the chair from the intermediate position to the fully reclined position. (R.p. 952).

91. The arm of the bellcrank and the pin perform a dual function of controlling movement of the leg-rest and likewise guiding movement of the seat and back-rest unit during operation of the chair from a sitting position to an intermediate position. (R.p. 951 and 624).

92. A stop which engages a link at the back of the seat in Plaintiff's 87–TV Fixture does not block movement of the links of the leg-rest linkage relative to each other. (R.p. 628, 629; 956 and 957).

93. Plaintiff's 87–TV Fixture does not have an auxiliary pivot which is displaced relative to the support as specified in each of Claims 1, 2, 12 and 13 of Lorenz Patent No. 2,918,113. (R.p. 954).

94. Plaintiff's 87–TV Fixture does not have means mounting an auxiliary pivot for displacement relative to the support as defined in each of Claims 1, 2, 12 and 13 of Lorenz Patent No. 2,918,113. (R.p. 955).

95. Plaintiff's 87–TV Fixture does not have means blocking links of leg-rest control linkage against movement relative to each other as defined in each of Claims 1, 2, and 13 of Lorenz Patent No. 2,918,-113. (R.p. 955).

96. Plaintiff's 87–TV Fixture does not have a movable pivot on the support or means mounting the movable pivot for translatory movement relative to the support as defined in Claim 12 of Lorenz Patent No. 2,918,113. (R.p. 956).

97. Plaintiff's 87–TV Fixture lacks one or more elements of the combination defined in each of Claims 1, 2, 12 and 13 of Lorenz Patent No. 2,918,113 (R.p. 954–957).

98. Lorenz Patent No. 2,918,113 is issued in a crowded art of reclining chairs. (R.p. 1065).

99. Defendant testified that his Patent No. 2,918,113 is an improvement on the multiple position chairs shown in his Patent No. 2,173,283 issued September 9, 1939. (R.p. 52–60).

## Conclusions of Law

XLVI. It is the claims of the patent which "measure the invention" and define precisely what the invention is, and the limits beyond which one cannot pass without infringing; therefore it is the claims of the patent to which one must look to determine whether there is an infringement. (Walker on Patents, Deller's Edition Vol. 3, Section 450, p. 1681).

XLVII. Omission of one element of a combination covered by any claim of a patent averts any charge of infringement based on that claim. (Walker on Patents, Deller's Edition Vol. 3, Section 461, p. 1695).

XLVIII. Changing the relative positions of the parts of a machine averts infringement, where the changing of those positions so changes the functions of the parts, that the machine acquires a substantially different mode of operation, though the result of the machine remains the same. (Walker on Patents, Deller's Edition, Vol. 3, Section 463, p. 1700).

XLIX. For one device to be the equivalent of another within the meaning of the patent laws it is necessary that there be identity of function and substantial identity of the way of performing that function. (Walker on Patents, Deller's Edition, Vol. 3, Section 466, p. 1703).

L. Plaintiff's 87–TV Fixture does not infringe Claims 1, 2 and 13 of Lorenz Patent No. 2,918,113 because it does not have an auxiliary pivot which is displaced relative to the support; it does not have means mounting an auxiliary pivot for displacement relative to the support; and it does not have means blocking links of the leg-rest control linkage against movement relative to each other; all as specified in each of said Claims 1, 2 and 13 of Lorenz Patent No. 2,918,113.

LI. Plaintiff's 87–TV Fixture does not infringe Claim 12 of Lorenz Patent No. 2,918,113 because it does not have an auxiliary pivot which is displaced relative to the support; it does not have means mounting an auxiliary pivot for displacement relative to the support; and the pivot is not mounted for translatory movement relative to the support; all as defined in said Claim 12 of Lorenz Patent No. 2,918,113.

LII. Since the pin and cam slot of Plaintiff's 87–TV Fixture performs functions different from those ascribed to the auxiliary pivot of Lorenz Patent No. 2,-918,113, said pin and cam slot is not the equivalent of the auxiliary movable pivot construction and the means for mounting the same as defined in Claims 1, 2, 12 and 13 of Lorenz Patent No. 2,918,113.

LIII. Since the Lorenz patent allegedly covers an invention in a crowded field, the patent must be strictly construed with a very narrow range of equivalents. Texas Pit Service, Inc. v. Brackett, (CCA–5 1959) 272 F.2d 882; United States Industries, Inc. v. Otis Engineering Corp., (CCA–5 1960) 277 F.2d 282.

LIV. Claims 1, 2, 12 and 13 of Lorenz Patent No. 2,918,113 cannot be enlarged in scope to apply to Plaintiff's 87–TV Fixture or a chair incorporating Plaintiff's 87–TV Fixture wherefore said Claims 1, 2, 12 and 13 are not infringed by Plaintiff's 87–TV Fixture or by a chair incorporating said 87–TV Fixture.

LV. Since the pin and cam slot of Plaintiff's 87–TV Fixture perform functions different from those ascribed to the auxiliary pivot of Lorenz Patent No. 2,918,113 it is not the equivalent of the construction defined in Claims 1, 2, 12 and 13 of Lorenz Patent No. 2,918,113.

### PLAINTIFF'S 86–TV FIXTURE DOES NOT INFRINGE FLETCHER PATENT No. 2,940,509

*Findings of Fact*

100. In each embodiment of the alleged invention in Fletcher Patent No. 2,940,509 the inventor describes one part of the chair mechanism as being effective to move the seat and back-rest unit about a first instantaneous center of rotation and a different part of the chair mechanism effective during a second phase of movement to move the seat and back-rest about a second instantaneous center of rotation. (R.p. 366–370; 379, 380 and 392–394; 396, 397; 400, 406; 646–649; 653, 654; 657–659; 660–662, 669–670).

101. In the several embodiments shown in Fletcher Patent No. 2,940,509 one or both of the centers of rotation are fixed with respect to the base of the chair. (R.p. 379, 394, 397, 406, 408).

102. Each of Claims 1, 2, 10, 11, 14 and 16 defines means providing a first instantaneous center of rotation for the body supporting unit and means providing a second instantaneous center for the body supporting unit. (R.p. 439, 442; 972, 973; 975, 976; 982, 983; 985, 986; 988, 989).

103. In each embodiment of the alleged invention disclosed in Fletcher Patent No. 2,940,509 a positive stop or blocking means is provided to arrest movement of the body supporting unit about the first instantaneous center and to constrain subsequent movement of the body supporting unit to movement about a second instantaneous center. (R.p. 367–370; 390–392; 396–399; 405, 406; 648; 653; 658; 667, 668).

104. In an amendment filed April 17, 1959 in the Fletcher application (P.Ex. 18), the following argument was presented with respect to Claims 10 and 11 of the patent (Claims 17 and 18 of the application):

"Claims 17 and 18 further define first and second guiding means which control the movement of the body-supporting unit, the first guiding means providing a first instantaneous center of rotation and the second guiding means providing a second instantaneous center of rotation, with the unit moving rearwardly about both centers of rotation. In Gilchrist [Gilchrist British Patent 23927 (P.Ex. 30) issued August 13, 1914, cited by the Examiner], the chair is adjusted continuously first in a forward direction and then a rearward direction, or vice versa. There are not two instantaneous centers of rotation for rearward movement. Claims 17 and 18 in addition define the centers of rotation as being independent of each other with the second center being located rearwardly of the first. This structure is entirely absent in Gilchrist. The claims then go on to define blocking means which limits movement of the first guiding means, halts further movement of the unit about the first instantaneous center of rotation and constrains movement of the unit to movement about the second instantaneous center of rotation. Again, no such blocking means is shown or suggested in Gilchrist. No move-

ment of any guiding means is blocked in the Gilchrist patent to permit further movement by the other guiding means."

105. In an amendment filed March 29, 1960 in the Fletcher application (P.Ex. 18) the following argument was presented with respect to Claims 14 and 16 of the patent, Claims 25 and 27 respectively of the application:

"Claims 10, 12, 14 and 16 have been cancelled and Claims 25, 26 and 27 added. These new claims are drawn along the lines of allowed Claim 17 [Patent Claim 10] but contain structural limitations expressed in more specific terms in allowed Claim 5 [Patent Claim 2]. Claim 25 [Patent Claim 14] recites that the first instantaneous center of rotation is a movable center of rotation, thereby including said structure as shown in Figs. 3 and 7 wherein the first motion phase is a compound movement. Where, for example, front and rear guide links are provided to guide the body-supporting unit during the first motion phase, as shown in Fig. 3, the instantaneous center of rotation will move forwardly, or in a direction opposite the movement of the body-supporting unit. * * *

"Claim 27 [Patent Claim 16] recites that the first instantaneous center of rotation is movable and the second instantaneous center is fixed, as shown specifically in Fig. 3. This claim also defines the leg-rest and its actuating means."

106. Defendant's expert testified that Plaintiff's 86–TV Fixture corresponds more nearly to Fig. 7 and Fig. 8 of Fletcher Patent No. 2,940,509 than any other Figure of that patent. (R.p. 685).

107. Defendant's expert testified that a single constrained 4-bar linkage would give the motion of pin 333 along slot 337A and of pin 335 along slot 339 and moving from the position shown in Fig. 7 to the full line position of Fig. 8 of Fletcher Patent No. 2,940,509, and some other mechanism would be necessary to give motion of the pin 333 along slot 337 from the full line position shown in Fig. 8 to the dotted line position shown in Fig. 8. (R.p. 688–698).

108. Defendant's expert testified that the part or link F shown in Defendant's Exhibit 48 is necessary to the guiding function in the 86–TV Fixture as moved from the sitting position to the intermediate position. (R.p. 714).

109. Defendant's expert testified that the part F of the 86–TV Fixture is essential to the operation of the leg-rest mechanism. (R.p. 714).

110. Defendant's expert testified that if the link F were removed from the 86–TV Fixture the kinematic movement would not be the same. (R.p. 716).

111. Defendant's expert testified that the member F constitutes a part of the guiding means for the seat to move the seat about a center of rotation with respect to the base. (R.p. 716).

112. If the link F is removed from Plaintiff's 86–TV Fixture, it would be an unconstrained linkage. (R.p. 723).

113. Defendant's expert testified that in Plaintiff's 86–TV Fixture the same members of the mechanism control the second phase of motion as the first phase of motion. (R.p. 726, 727).

114. Defendant's expert testified that the 86–TV Fixture is one constrained mechanism. (R.p. 729–730).

115. Defendant's expert testified that in moving from the sitting position to the intermediate position nothing blocked or stopped movement of any part of the 86–TV linkage mechanism. (R.p. 731–732).

116. Plaintiff's 86–TV Fixture has one constrained mechanism for controlling operation of the body supporting unit from the upright sitting position to the fully reclined position. (R.p. 729–732, 1029).

117. Plaintiff's 86–TV Fixture causes the body supporting unit to rotate about a single instantaneous center of rotation with respect to the base. (R. p. 935; 1004; 1030).

118. Plaintiff's 86–TV Fixture permits the occupant of a chair to arrest movement of the chair in any selected position within a wide range. (R.p. 869; 1001).

119. Depending upon the weight and size of the occupant of the chair, a chair embodying Plaintiff's 86–TV Fixture will permit the occupant to position himself in a comfortable position where the chair and the occupant will be balanced in an intermediate position. (R.p. 923, 924).

120. Movement from a sitting position to any one of the selected intermediate positions and then to a fully reclined position in a chair having the 86–TV Fixture is effected by the operation of the single constrained bar linkage which causes the body supporting unit to move about a single center of rotation with respect to the base. (R.p. 729–732; 1004; 1029).

121. The instantaneous center of rotation for a body supporting unit of a chair employing Plaintiff's 86–TV Fixture is a continuously moving instantaneous center with respect to the base or chair frame. (R.p. 935, 936).

122. Limits of movement of a chair embodying Plaintiff's 86–TV Fixture are determined by blocking devices for the upright sitting position and for the fully reclining position. (R.p. 867; 1005).

123. Plaintiff's 86–TV Fixture does not have any blocking device or blocking means for stopping any part of the fixture or the chair in an intermediate position. (R.p. 867; 1005).

124. Plaintiff's 86–TV Fixture does not have any blocking means for arresting movement of a chair about a first instantaneous center. (R.p. 1005, 1008).

125. Plaintiff's 86–TV Fixture does not provide for movement of the body supporting unit about a first instantaneous center and a second instantaneous center as specified in each of Claims 1, 2, 10, 14 and 16 of Fletcher Patent No. 2,940,509. (R.p. 1004–1009).

126. Plaintiff's 86–TV Fixture does not have second guiding means mounting the body supporting unit as defined in each of Claims 1, 2 and 10 of Fletcher Patent No. 2,940,509. (R.p. 1006–1009).

127. Plaintiff's 86–TV Fixture does not have means mounting the body supporting unit on the chair providing a second instantaneous center of rotation as defined in each of Claims 14 and 16 of Fletcher Patent No. 2,940,509. (R.p. 1008, 1009).

128. Plaintiff's 86–TV Fixture does not include any blocking means positioned to limit movement of the body supporting unit about an instantaneous center of rotation at an intermediate tilted position, as specified in each of Claims 1, 2, 10, 14 and 16 of Fletcher Patent No. 2,940,509. (R.p. 1005–1009).

129. Plaintiff's 86–TV Fixture does not have any means comprising a fixed pivotal connection of the body supporting unit to the support as specified in Claim 2 of Fletcher Patent No. 2,940,509. (R.p. 1007, 1008).

130. Plaintiff's 86–TV Fixture does not move the body supporting unit about a fixed instantaneous center as specified in Claim 16 of Fletcher Patent No. 2,940,509. (R.p. 1009).

131. Fletcher patent No. 2,940,509 (D.Ex.2) is issued in a crowded art of reclining chairs. (R.p. 1065).

*Conclusions of Law*

LVI. It is the claims of the patent which "measure the invention" and define precisely what the invention is, and the limits beyond which one cannot pass without infringing; therefore it is the claims of a patent to which one must look to determine whether there is an infringement. (Walker on Patents, Deller's Edition, Vol. 3, Section 450, p. 1681).

LVII. Omission of one element of a combination covered by any claim of a patent, averts any charge of infringement based on that claim. (Walker on Patents, Deller's Edition, Vol. 3, Section 461, p. 1695).

LVIII. The respective results of a machine covered by the claim of a patent, and of a machine alleged to in-

536

fringe that claim, do not furnish a criterion by which to decide the question of infringement. (Walker on Patents, Deller's Edition, Vol. 3, Section 495, p. 1745).

LIX. For one device to be the equivalent of another within the meaning of the patent laws it is necessary that there be identity of function and substantial identity of the way of performing the function. (Walker on Patents, Deller's Edition, Vol. 3, Section 466, p. 1703).

■ LX. Since the Fletcher patent is in a crowded field of reclining chairs the patent must be strictly construed with a very narrow range of equivalents. Texas Pit Service, Inc. v. Brackett, (CCA–5 1959) 272 F.2d 882; United States Industries Inc. v. Otis Engineering Corporation, (CCA–5 1960) 277 F.2d 282.

■ LXI. Plaintiff's 86–TV Fixture does not infringe Claim 1 of Fletcher Patent No. 2,940,509 because it does not provide for movement of the body supporting unit about a first instantaneous center and a second instantaneous center; it does not have second guiding means mounting the body supporting unit for further rearward movement about a second instantaneous center of rotation along a second path of movement; it does not have blocking means positioned to block the first guiding means from further rearward movement when the body supporting means reaches an intermediate tilted position.

LXII. Claim 2 of Fletcher Patent No. 2,940,509 is not infringed by Plaintiff's 86–TV Fixture because that fixture does not provide for movement of the body supporting unit about a first instantaneous center and a second instantaneous center; it does not have blocking means positioned to block the guiding means from further rearward movement when the body supporting means reaches an intermediate tilted position; it does not have second guiding means mounting the body suporting unit on the support for movement along a second path of movement; the body supporting unit is not moved by the second guiding means along a second path of movement from the intermediate tilted position to its fully tilted position; and it does not have guiding means comprising a fixed pivotal connection of the body supporting unit to the support to provide a simple pivoting movement of the body supporting unit relative to the support.

LXIII. Plaintiff's 86–TV Fixture does not infringe Claim 10 of Fletcher Patent No. 2,940,509 because it does not provide for movement of the body supporting unit about a first instantaneous center and a second instantaneous center; it does not include second guiding means providing a second instantaneous center of rotation for the body supporting unit; the body supporting unit is not movable rearwardly about a second instantaneous center of rotation; it does not have centers of rotation independent of each other; and it does not have blocking means for limiting movement of the first guiding means at the intermediate position to halt movement of the body supporting unit about the first instantaneous center and it does not have means constraining further rearward movement of the body supporting unit to movement about second instantaneous center of rotation.

LXIV. Plaintiff's 86–TV Fixture does not infringe Claim 14 of Fletcher Patent No. 2,940,509 because it does not provide for movement of the body supporting unit about a first instantaneous center and a second instantaneous center; the means movably mounting the body supporting unit on the support does not provide a second instantaneous center of rotation for the body supporting unit; the body supporting unit is not movable rearwardly about the second instantaneous center of rotation; it does not have blocking means for limiting movement of the body supporting unit about the first instantaneous center at the tilted sitting position; and it does not constrain further rearward movement of the body supporting means to movement about a second instantaneous center of rotation.

LXV. Plaintiff's 86–TV Fixture does not infringe Claim 16 of Fletcher Patent No. 2,940,509 because it does not provide for movement of the body supporting unit about a first instantaneous center and a second instantaneous center; it does not include means mounting the body supporting unit providing a second instantaneous center of rotation for the body supporting unit; the body supporting unit is not movable rearwardly about a second instantaneous center of rotation along a second path of movement from a tilted sitting position to a fully tilted position; it does not have blocking means for limiting movement of the body supporting unit about a first instantaneous center at the tilted sitting position; it does not constrain further rearward movement of the body supporting means to movement about a second instantaneous center of rotation; and it does not have any center of rotation which is a fixed center.

LXVI. Defendant is estopped to assert a greater scope for claims of the Fletcher patent in view of the arguments advanced during the prosecution to the effect that the claims define first and second guiding means which control movement of the body supporting unit about a first instantaneous center and a second instantaneous center. Exhibit Supply Co. v. Ace Patents Corporation, 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736.

■ LXVII. Having asserted and argued for the allowance of patent Claims 14 and 16 that said claims are drawn along the lines of Patent Claim 10, Defendant is estopped to assert a broader construction for said Claims 14 and 16 than is possible within the definition of Claim 10 of the patent.

■ LXVIII. Plaintiff's 86–TV Fixture is a single mechanism for moving a body supporting unit about a single continuously moving instantaneous center with respect to the base and while it moves from a sitting position to an intermediate position to a fully reclined position, this similarity of result does not constitute infringement of any of Claims 1, 2, 10, 14 and 16 of Fletcher Patent No. 2,940,509 because the result is accomplished by a mechanism which has a different function and performs the function in a different way.

LXIX. Plaintiff's 86–TV Fixture does not include any equivalent of the blocking means specified in each of Claims 1, 2, 10, 14 and 16 of Fletcher Patent No. 2,940,509 and therefore does not infringe said claims.

LXX. The control link identified as F in Defendant's Exhibit 48 is a part of the constrained mechanism and is effective during the entire operation of the chair from its sitting position to its fully tilted position in controlling the operation of the seat as well as the leg-rest wherefore it cannot be construed as "blocking means" as defined in each of Claims 1, 2, 10, 14 and 16 of Fletcher Patent No. 2,940,509.

■ LXXI. By reason of the arguments advanced to obtain allowance of claims in Fletcher Patent No. 2,940,509 specifying two instantaneous centers with blocking means for transferring movement from one center to the other center, Defendant is estopped for asserting an interpretation of Claims 1, 2, 10, 14, and 16 of Fletcher Patent No. 2,940,-509 broad enough to encompass the single mechanism in Plaintiff's 86–TV Fixture which has only a single instantaneous center of rotation with respect to the base or chair frame, and omits any blocking means for limiting movement about the instantaneous center of rotation.

## BREACH OF ORAL CONTRACT

### Findings of Fact

132. Plaintiff's President met with Defendant in Greenwich, Connecticut, on or about July 6, 1959. (Pretrial Stipulation III–15).

133. During the meeting in Greenwich, Connecticut, there was discussion of an agreement between the parties. (R.p. 823).

134. Testimony of the parties differs concerning the substance of any agreement reached. (R.p. 823–825; 77–81).

135. After said meeting Defendant communicated with Plaintiff by a letter dated August 26, 1959, which establishes that an agreement had not been reached. (P.Ex. 4).

136. Defendant's Exhibit 19 confirms Plaintiff's testimony that its President visited Defendant at Greenwich, Connecticut, for the purpose of obtaining permission to manufacture a chair fixture for Thayer-Coggin, Inc.

137. At the meeting in Greenwich no agreement was reached concerning the patents or applications to be licensed (R.p. 188) or the particular fixture or fixtures (R.p. 189), or the assignment of Plaintiff's inventions to Defendant without compensation. (R.p. 189, 190).

138. Defendant testified that there was no agreement until Defendant's Exhibit 15 was signed and it was not signed. (R.p. 192).

139. A letter dated August 12, 1959, from Defendant's counsel to Plaintiff (D. Ex. 16) referred to the written agreement (D.Ex. 15) as a "proposed general business agreement which is proposed to be entered into prior to the granting to you of patent licenses * * *"

140. Defendant's Exhibit 15 is incomplete as it lacks the numbers of any patents to be licensed; it lacks the schedule of patents and patent applications to be assigned by Plaintiff to Defendant; and it fails to specify any royalty rates.

141. Defendant testified that the oral agreement was to be for a term of ten years. (R.p. 191).

142. The written agreement (D.Ex. 15) submitted by Defendant to Plaintiff is incomplete and inconsistent with Defendant's version of the alleged oral agreement. (R.p. 78–82; 186–192; 210, 211).

143. Defendant's testimony does not establish the terms of the alleged oral agreement. (R.p. 78–82; 186–192; 210, 211).

144. There is no evidence that there was a meeting of the minds during the meeting in Greenwich between Defendant and Plaintiff's President as to any agreement.

145. At Defendant's request Plaintiff forwarded to Defendant a chair fixture for modification, but the modified fixture was never disclosed to Plaintiff. (R.p. 823–824).

### Conclusions of Law

LXXII. Statements in the letter from Amster & Levy dated August 12, 1959, (D.Ex.16), and the letter from Defendant dated August 26, 1959 (P.Ex. 4) establishes that no agreement existed between the parties at that time.

■ LXXIII. The evidence does not support Defendant's contention that Defendant and Plaintiff's President made an oral license agreement at Greenwich, Connecticut.

■ LXXIV. Any oral agreement for a period of ten years fails to comply with the Statute of Frauds.

LXXV. Defendant has not sustained the burden of proving either the existence of an oral agreement between the parties or the terms of such an agreement wherefore it must be concluded that there was no oral agreement.

## BREACH OF CONFIDENTIAL DISCLOSURE OF FIDUCIARY RELATIONSHIP

### Findings of Fact

146. Defendant testified that he disclosed to Plaintiff's President at a meeting in Greenwich, Connecticut, a so-called Schliephacke chair identified as Defendant's Exhibits 38 and 41. (R.p. 110, 213).

147. Defendant testified that the disclosure of Defendant's Exhibit 41 was made in confidence. (R.p. 78).

148. Defendant's evidence does not detail any matter other than the Schliephacke chair which was disclosed in confidence. (R.p. 111).

149. Defendant testified that during the meeting in Greenwich he did not disclose to Mr. Hoffman any manufacturing details, any manufacturing know-how, or any problems inherent in the production

of multiple position movements. (R.p. 196, 197, 198).

150. Defendant testified that the Schliephacke chair, Defendant Exhibit 41, was displayed by Thayer-Coggin Company in the Chicago market in June 1959, prior to the alleged disclosure to Plaintiff's President. (R.p. 221).

151. There is no evidence that Plaintiff used any information allegedly disclosed in confidence to Plaintiff's President.

152. Plaintiff's President testified that he did not direct his Development Department concerning details for the development of a multiple position chair fixture. (R.p. 826).

153. The Engineer, Clark Rogers, who developed Plaintiff's 87–TV Fixture testified that he did not receive any detailed instructions from Plaintiff's President. (R.p. 1056).

### Conclusions of Law

■ LXXVI. To perfect his claim for breach of confidential disclosure Defendant must establish:

(a) that he possessed knowledge or information which was novel and not generally known;

(b) that he communicated this knowledge or information to the Plaintiff under an express or implied agreement limiting its use or disclosure by the Plaintiff; and

(c) that Plaintiff used or disclosed the knowledge or information so obtained in violation of the confidence, to the injury of the Defendant.

Mitchell Novelty Company v. United Manufacturing Company, (CCA–7 1952) 199 F.2d 462; Kinnear-Weed Corporation v. Humble Oil & Refining Company, (E.D.Tex.1956) 150 F.Supp. 143; B. F. Gladding & Co., Inc. v. Scientific Anglers, Inc. (CCA–6 1957) 245 F.2d 722.

LXXVII. Defendant had the burden of proving each of the foregoing essential elements. "Trade Secrets" by Risdale Ellis, 1953, Sections 236 and 251.

■ LXXVIII. Evidence establishes that the so-called Schliephacke chair was on public display and demonstration in the show in Chicago in June 1959 so Defendant did not possess any knowledge or information which was not generally known and which he could claim was disclosed in confidence to Plaintiff. Sandlin v. Johnson, (CCA–8 1945) 152 F.2d 8; Northup v. Reish et al., (CCA–7 1953) 200 F.2d 924; Colgate-Palmolive Co. v. Carter Products, Inc., (CCA–4 1956) 230 F.2d 855; Baum v. Jones & Laughlin Supply Co., (CCA–10 1956) 233 F.2d 865; Kinnear-Weed Corp. v. Humble Oil & Refining Co., (E.D.Tex.1956) 150 F.Supp. 143.

■ LXXIX. There was not any express or implied agreement limiting Plaintiff's use or disclosure of any information or knowledge.

LXXX. Defendant has failed to discharge its burden of proving the elements necessary to support its claim for breach of confidential disclosure.

### FRAUDULENT ADVERTISING

#### Findings of Fact

■ 154. Paragraph 38 of Defendant's counterclaim asserts Plaintiff's advertisement in "Upholstery Industry," February 1960 (D.Ex. 25), contains a fraudulent statement that General Steel fixtures for TV Recliners are "covered by pending patents."

155. Plaintiff's Patents Nos. 2,693,-845 and 2,942,650 listed on Defendant's Exhibit 29 do not cover a TV Fixture (R.p. 857).

156. Plaintiff's President testified that Plaintiff distributed tags like Defendant's Exhibit 29 to only two customers. (R.p. 855).

157. Tags like Defendant's Exhibit 29 were primarily for use on high leg multiple position resters which did not incorporate the 86–TV or the 87–TV Fixture. (R.p. 853, 854).

158. Plaintiff's President explained his reasons for having Defendant's Ex-

hibit 29 printed and supplying them to certain customers. (R.p. 833, 853–858).

159. There is no evidence that Defendant's Exhibit 29 contains any fraudulent statement.

### Conclusions of Law

LXXXI. The record in this case does not support Defendant's allegation of fraud, and Defendant has not discharged the burden of proving fraud.

### DEFENDANT FAILED TO PROVE INFRINGEMENT OF FLETCHER PATENT NO. 2,940,509 AND SCHLIEPHACKE PATENT NO. 2,940,510

### Findings of Fact

160. Fletcher Patent No. 2,-940,509 and Schliephacke Patent No. 2,940,510 were issued by the U. S. Patent Office on June 14, 1960.

161. Defendant's counterclaim for infringement of Fletcher Patent No. 2,940,-509 and Schliephacke Patent No. 2,940,-510 was filed on June 15, 1960.

162. There is no evidence of any activity by Plaintiff in the manufacture, sale or marketing of Reclining Chair Fixtures on June 14, or June 15, 1960.

### Conclusions of Law

LXXXII. As a condition precedent to the right of a patent holder to maintain an action for infringement of a patent it must be established that the Defendant has committed some act of infringement after the patent issued and prior to the institution of the suit. Lambert et al. v. Dempster Bros., (D.C.E.D. Tenn.1940) 34 F.Supp. 610; Rohm & Hass Co. v. Permutit Co. (D.C.Del.1953) 114 F.Supp. 846; Minnesota Mining & Manufacturing Co. v. Plymouth Rubber Co., Inc., (D.C.N.D.Ill.1959) 178 F.Supp. 591.

LXXXIII. Since Defendant failed to prove acts of infringement by Plaintiff after Fletcher Patent No. 2,940,509 and Schliephacke Patent No. 2,940,510 were issued on June 14, 1960, and prior to the filing of Defendant's counterclaims on June 15, 1960, the counterclaims of Defendant for infringement of said Patents Nos. 2,940,509 and 2,940,510 must be dismissed.