## DOW CHEMICAL CO. v. SKINNER et al.
### No. 11323.

United States Court of Appeals,
Sixth Circuit.
April 15, 1952.

Clarence B. Zewadski, Detroit, Mich., William M. Yates, Midland, Mich. (Clarence B. Zewadski, Detroit, Mich., William M. Yates, Midland, Mich., on the brief), for appellant.

William H. Parmelee, Pittsburgh, Pa., Leo T. Wolford, Louisville, Ky., (F. Norman Higgs, Bay City, Mich., Christy, Parmelee & Strickland, William H. Parmelee, and Lewis Neilson, all of Pittsburgh, Pa., on the brief), for appellees.

Rockwell T. Gust, Detroit, Mich, John F. Oberlin, Cleveland, Ohio, Karl B. Lutz, Pittsburgh, Pa., on brief, amicus curiae.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of an action for infringement of Skinner patent 1,847,365

for extrusion of metal. The application was filed March 25, 1930, and the patent issued March 1, 1932. Claims 1, 3, 4, 5, and 6 are in issue. The Dow Chemical Company (hereinafter called Dow) asserts invalidity of the Skinner patent and denies infringement. The District Court held all claims valid and infringed.

The extrusion of solid sections of metals, including aluminum, had long been practiced. It had been attained by subjecting heated metal to pressure in a cylinder by means of a hydraulic piston which forced the metal through a die. The problem of securing hollow tubes with minimum variations in wall thickness had not been solved in 1930 when Skinner filed his application. The Skinner patent claims to present an improved device for extruding products in tubular form. It discloses an extrusion cylinder mounted within a casing and adapted to hold a metal billet between a plunger and the female die mounted at the end of the cylinder. The shape of the extruded product is determined by a mandrel or core integrally connected with the inner wall of the cylindrical mandrel holder. At its entrance the mandrel holder abuts against shoulders in the extrusion cylinder and at its exit it abuts against the female die. Between the face of the extrusion die and the outlet end of the mandrel die there is what Skinner calls a "continuously annular clearance opening." This is the mixing chamber in which the metal separated by the attachment of the mandrel to the mandrel holder reunites before passing through the orifice of the female die is less than the area of the inwardly against the billet, the metal flows into the holder and passes into the mixing chamber. Here pressure is built up, due to the fact that the area of opening in the female die is less that the area of the mixing chamber. This pressure forces the metal to unite into a homogeneous mass which is extruded from the female die in the shape of hollow pipe or tube.

In the prior art the mandrel used in extrusion was a floating or semi-floating mandrel. The floating mandrel rode with the plunger; the semi-floating mandrel was attached to the piston. This practice resulted in the so-called two-step process; that is, with use of the floating or semi-floating mandrel the outer diameter of the extruded tube varied to such a degree that it was necessary to shave or draw it off into the dimension desired. The two-step process was used by principal manufacturers of aluminum products until around 1935. At that time there began to be an increased demand for hollow shapes which were becoming important in industrial development; and a more precise method of extrusion was necessary. Skinner claims to have solved this problem by his substitution of a rigidly fixed mandrel for the floating or semi-floating mandrel.

Dow concedes that the use of the fixed mandrel has resulted in the elimination of the two-step process. The engineer of Dow's magnesium division states that good tolerances are secured with the floating mandrel "by accident." Also the use of the fixed mandrel has greatly increased the rate of production which may run from 800 to 1,000 feet a minute for 2-S, a soft-aluminum alloy. However, Dow contends that its accused devices are manufactured not in accordance with Skinner, but in accordance with the patents issued to the Hansons, British patent 7427, United States patent 2021, and reissue patent 82.

Dow asserts that there are two classifications of die, one derived from Hanson, under which the accused dies, the Dow spider die and the Dow porthole die, are made. It describes this class of die as one in which the mandrel holder has an obstructing entrance face through which there are a number of passageways into the mixing chamber "located eccentrically but arranged symmetrically around the center of the mandrel." The metal is divided into separate streams and flows through these passageways into the mixing chamber.

The second class of die described by Dow, which Dow says includes the Skinner device, covers dies in which there is a cylindrical mandrel holder without an entrance face but with a single concentric passageway which is partially blocked by the wall support for the mandrel. In this die the metal is not divided into separate

streams but is only partly divided by the mandrel support. It is asserted that a die of one class is not the equivalent of a die of the other class.

The three Hanson patents covered the extrusion of "lead or tin or any alloy of soft metals." Operations were conducted under Hanson reissue patent 82 over a century ago. Tatham v. Lowber, C.C. Fed.Cas.13,764, 2 Blatchf. 49; LeRoy v. Tatham, 14 How. 156, 14 L.Ed. 367. In LeRoy v. Tatham, 22 How. 132, 16 L.Ed. 366 the reissue patent was held valid and infringed. In the subsequent accounting substantial damages were allowed and the defendants conceded that under the Hanson disclosure they had manufactured almost a million feet of lead pipe. It follows that the Hanson patents were operable.

The accused dies, the Dow spider die and the Dow porthole die, differ markedly in appearance from the Skinner die, and in certain respects resemble Hanson. The District Court held that the differences between these dies and Skinner were immaterial for he concluded that the same result was secured by the accused devices and by Skinner through equivalent means.

In the spider die the mandrel holder is a cruciform from the center of which a fixed mandrel extends. The female die is a flat-faced die with a cylindrical bearing. At its outer edge are arcuate projections which cooperate as abutments with the four arms of the mandrel holder. The mandrel holder has a flat entrance face which causes the plastic metal, when pressed forward by the plunger, to divide and flow through the four V-shaped spaces between the spider arms into the mixing chamber and through the orifice of the female die.

In the Dow porthole die the mandrel holder is a metal cylinder having a flat entrance face in which six holes are symmetrically arranged around the female die. In the center of the exit end of the cylinder an integral mandrel is located having around it an annular recess. The mixing chamber is located within the female die which discloses six channels that register with the six holes through the mandrel holder. The female die is positioned within the annular recess formed in the exit end of the mandrel holder. The accused dies reveal certain features used by Skinner. The mandrel is rigidly fixed and the mandrel die bears against the female die but in each case there is an entrance face which obstructs the flow of the metal and causes the direction and operation of the flow to differ from that of Skinner.

We think the conclusion of the District Court was erroneous for two reasons: (1) in making this decision it relied upon our decision in Reynolds Metals Co. v. Skinner, C.C., 166 F.2d 66, 72, certiorari denied 334 U.S. 858, 68 S.Ct. 1528, 92 L.Ed. 1778; and (2) it ignored the law applicable to construction of patents in which the inventor voluntarily limits his claims.

This case is not controlled by Reynolds Metals Co. v. Skinner, supra. That controversy arose out of a contract between Reynolds, Skinner, and his partner Bradley by which the partnership sold to Reynolds its entire operation for the extrusion of aluminum. The Reynolds Company agreed to pay royalties for the use of the "processes, patents and devices" of Skinner and Bradley. These included numerous unpatented devices and three patents, two of which were designed to be used specifically in the extrusion of aluminum. One of them was for a vertical two-story press assembly. The use of the patents, processes and devices, as that record showed, opened up a new field in the extrusion of aluminum. The third patent was Skinner, 1,847,365, involved herein, for "extrusion of metal," stated in the specifications to be for an improvement. The Hanson patents were not in evidence and the Dow dies were not before the court.

The court in the cited case held that the contract covered the entire disclosure of the applications and drawings of the patents as well as the claims, and pointed out: "Since the issue is not one of infringement, we are not concerned with the prior art. Carbo-Frost, Inc. v. Pure Carbonic, Inc., 8 Cir., 103 F.2d 210, 223, and the rules announced in infringement cases such as Scott Paper Co. v. Marcalus Mfg. Co., Inc., 326 U.S. 249, 66 S.Ct. 101, 9 L.Ed. 47 have no bearing here."

In accordance with this holding, evidence as to the validity of the Skinner patent, 1,847,365, was held to be immaterial, and the issue of infringement was excluded.

On the second point the Skinner file-wrapper history reveals that the Patent Office rejected Skinner's original claims upon the French patent, Lepan 8282, or upon the French patent in view of certain other patents cited. Skinner then canceled his original first claim which was drafted in general terms and amended his other claims in order to avoid reading upon the structure of Lepan. In Lepan as in Skinner the mandrel holder is cylindrical and has no entrance face. The mandrel is positioned within the concentric conical opening of the mandrel holder and is laterally connected to the side wall of the holder. The mandrel holder abuts against the female die and Lepan locked the male and female dies together with a dowel pin. The concentric construction which is important in Skinner was thus disclosed in Lepan and the rigid holding of the mandrel was taught in some degree. In his communications with the Patent Office Skinner pointed out that his bearing in the female die was cylindrical while that of Lepan was conical and that his mandrel was strongly attached to the walls of the mandrel holder by the concaved shank portion. He also distinguished from Lepan as to the continuously annular space around the mandrel by spacing it backwardly from the female die while Lepan's continuously annular space is located mainly in the female die. Skinner emphasized these distinctions in the amendments to his claims and in the addition of three new claims. The limitations of form voluntarily imposed by Skinner and appearing in

various of his patent claims include the following: a female die "having a major diameter cylindrical opening," a mandrel "connected laterally with the wall of the mandrel die by concaved surfaces," a "longitudinal cylindrical opening" through the mandrel holder, and a mixing chamber which is a "continuously annular clearance opening." Also these limitations are emphasized by repetition in substance.

These limitations compel the court to limit the invention to the forms and shapes therein defined. Where the claims of a patent define an element in terms of form, location, or function, thereby creating an express limitation and where that limitation pertains to the inventive step, other forms may not be treated as equivalents. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236; Crampton Mfg. Co. v. Crampton, 6 Cir., 153 F.2d 543, certiorari denied, 328 U.S. 840, 66 S.Ct. 1017, 90 L.Ed. 1615; Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541.

Skinner's die patent herein involved was for an improvement only, and hence must be narrowly construed as to equivalents.

Claim 1 of the patent provides for a mandrel holder having a larger cylindrical opening concentric with the female die "flaring outwardly at its other end for registering connection with a plunger cylinder." [1] This is retained in substance in Claims 4, 5 and 6. This feature is revealed by neither of the accused dies. Claim 3 calls for a lateral connection between the mandrel and the wall of mandrel die by concaved surfaces. This

---

1. Claim 1: "Extruding die mechanism comprising a hollow extrusion die having a major diameter cylindrical opening, a mandrel die abutting thereagainst having a larger cylindrical opening concentric therewith and flaring outwardly at its other end for registering connection with a plunger cylinder, and a centrally arranged mandrel integral with the side wall thereof extending inwardly and axially of said openings and having laterally disposed concaved connecting web portions terminating backwardly from the outlet end of the delivery die providing annular circulation clearance, said mandrel having a cylindrical terminal projecting concentrically into the opening of the extrusion die."

Claim 3: "In combination with a plunger cylinder and an extrusion die having a major diameter controlling opening and means for mounting it in pressure resisting position, a mandrel die between the cylinder and die and abutting against each and having an enlarged opening concentric with the die and widening in the op-

is repeated in substance in Claims 1, 5 and 6. Neither of the accused dies has this feature. Claim 6 requires a continuously annular clearance opening. The Dow spider die does not reveal this, for its mixing chamber is interrupted by the projections of the spider arms. In the porthole die the mixing chamber, instead of being between the outlet end of the mandrel die and the face of the female die as in Skinner, is wholly within the female die. By his emphasis upon these features Skinner showed that he regarded them as important and as pertaining to the inventive step. He called witnesses in this case to testify to their importance. Since he considered these elements as part of his invention and since they are not included in the accused dies, infringement is not shown.

We next consider whether we are required to rule upon the validity of the Skinner patent although infringement has been found not to exist. It has been held both in the lower courts and in the Supreme Court that under such circumstances validity should not be adjudicated. Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263; Altvater v. Freeman, 319 U.S. 359, 363,

63 S.Ct. 1115, 87 L.Ed. 1450; Landis Machinery Co. v. Chaso Tool Co., 6 Cir., 141 F.2d 800, 805. In Altvater v. Freeman the rule that to hold a patent valid when not infringed is to decide a hypothetical case was held not to apply partly because of the existence of many claims in addition to the one involved in the issue of infringement and also because of the pending counterclaim which stated a real and existing controversy. In the instant case no counterclaim was filed and the issue of both infringement and validity was raised in the answer and amended answer. The claims involved in both issues (Nos. 1, 3, 4, 5, and 6) are the same.

██ A later expression of the Supreme Court upon this question is found in Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644 which declares:

"There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. Irvin v. Buick Motor Co., 8 Cir., 88 F.2d 947, 951; Aero Spark Plug Co. v. B. G.

posite direction concentric with the cylinder, a centrally arranged mandrel connected laterally with the wall of the mandrel die by concaved surfaces and having a reduced terminal projecting concentrically into the opening of the extrusion die, the plunger cylinder embracing the mandrel die having a plunger for forcing metal around the mandrel and through the openings of the mandrel die and the extrusion die.

Claim 4: "In combination with a plunger cylinder, a female extrusion die having a flat outer face and a major diameter-controlling cylindrical opening flaring outwardly beyond the opening, a resisting block having an enlarged clearance opening concentric therewith, means providing pressure resisting mounting therefor, a mandrel die having an enlarged opening in axial concentric alinement with the opening of the extrusion die and abutting thereagainst and provided with an integral laterally connected mandrel having a cylindrical reduced extension projecting into the opening of the extrusion die, said mandrel die being mounted within the end and having an enlarged flaring connection with the plunger cavity of the

plunger cylinder, and a plunger in said cylinder adapted to force metal through said cylindrical openings and around the mandrel of the mandrel die.

Claim 5: "A mandrel die as described having a longitudinal cylindrical opening flaring outwardly at one end for communication with a plunger cylinder provided with a centrally located mandrel having a concaved and rounded wall connection with the inner wall face of the opening and a cylindrical reduced terminal adapted to project concentrically through and beyond an opposite die opening.

Claim 6: "A mandrel die as described having a longitudinal cylindrical opening flaring outwardly at one end for communication with a plunger cylinder provided with a centrally located mandrel having a concaved and rounded wall connection with the inner wall face of the opening and a cylindrical reduced terminal extending through a continuously annular clearance opening at the outlet end of the mandrel die beyond its inner wall connection, adapted to project concentrically through an opposite cylindrical die opening."

Corp., 2 Cir., 130 F.2d 290; Franklin v. Masonite Corp., 2 Cir., 132 F.2d 800. It has come to be recognized, however, that of the two questions, validity has the greater public importance, Cover v. Schwartz, 2 Cir., 133 F.2d 541, and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent."

Electrical Fittings Corp. v. Thomas & Betts Co., supra, and Altvater v. Freeman, supra, are not cited. In view of the wording of the paragraph quoted we think that a discretion resides in the lower courts to determine whether or not decision upon validity is required. The Supreme Court employed the significant word "usually," thus indicating that a ruling upon validity is not essential in all cases involving both infringement and validity. Here the patent has expired and the public interest involved in ruling upon validity discussed in Cover v. Schwartz, 2 Cir., 133 F.2d 541, which was cited with approval in Sinclair & Carroll Co., Inc., v. Interchemical Corp., supra, would not seem to be subserved. The question is moot, and we conclude that a ruling upon validity is not required.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.