**R. Lee FRASER, Plaintiff-Appellant,**

v.

**CITY OF SAN ANTONIO, TEXAS, et al., Defendants-Appellees.**

No. 28371.

United States Court of Appeals, Fifth Circuit.

Sept. 8, 1970.

Rehearing Denied Oct. 8, 1970.

Richard B. Moore, San Antonio Tex., Donald R. Wellford, McDonald Yawn, McCloy, Wellford & Clark, Memphis, Tenn., for plaintiff-appellant.

Howard C. Walker, City Atty., for City of San Antonio.

Wilbur L. Matthews, San Antonio, Tex., for O'Neil Ford and Ray A. Pinnell, Jr.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., for Darragh & Lyda, Inc. and H. A. Lott, Inc.

Joe P. Smyer, San Antonio, Tex., Kent D. Kibbie, Fort Worth, Tex., for McIntire Equipment Co.

John H. Wood, Jr., Beckmann, Stanard, Wood & Keene, San Antonio, Tex., for Texstar Construction Corp.

Before THORNBERRY, COLEMAN, and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

R. Lee Fraser, of Memphis, Tennessee, charged the appellees (defendants below) with contributory infringement

of Claim 1 of his Patent, No. 3,260,025, "Method of Constructing a Building".

The defendants answered and moved for summary judgment, Rule 56(b) and (c), Federal Rules of Civil Procedure, pleading that the litigation presented no substantial issue of fact and that pursuant to the undisputed facts the patent was neither valid nor infringed.

The District Court agreed that summary judgment was in order and granted the motion, holding that the patent was invalid and, in any event, had not been infringed. We affirm the judgment as to the lack of infringement.

We consequently find it unnecessary to reach or decide the invalidity issue. We remand the case to the District Court with directions to vacate that portion of its judgment.

Claim 1 of the Fraser Patent illustrated a method for constructing a building. That method may briefly be described as follows:

First, a large substantially cylindrical core is constructed in an upstanding relationship to the ground. This core is so designed as to be relatively hollow. The core stands as high as the building and ultimately becomes its center, so that its hollow nature supplies a convenient means of access to the various floors as well as containing heating and cooling apparatus, wiring, plumbing, etc. The outside surface of the core also serves as an inner wall for the various floors of the building.

The next basic step is the construction of a plurality of substantially annular [1] floors adjacent the ground, each having central, substantially circular, openings through which the core extends. Then steel tensile bands are constructed around the floors to lend them greater strength.

The construction at this stage may be illustrated by a rod stuck in the ground but protruding through the holes in a number of flat washers stacked at its base.

The floors are then hoisted up the core with a plurality of hoisting members consisting of a winch, a series of pulleys and several lengths of cable. The floors are successively hoisted into place, beginning with the topmost, which serves as the roof of the building or the floor of the attic. The top floor is followed by the other floors until only the bottom one remains. This, of course, is the ground floor of the building.

As each annular floor reaches a predetermined location it is fastened to the central core and becomes a permanent floor of the building. This completes the basic construction of the multi-floored building. To finish the building for occupancy conventional methods are employed that are not at issue in this litigation.

Appellant's Claim 2 described a method for the lateral expansion of a building erected according to the method described in Claim 1. This claim was not involved in this litigation.

According to the appellant, Fraser, his first indication of a possible infringement of Claim 1 of his patent came on July 2, 1967, in the form of a news article in a Memphis newspaper. The article pictured the "Tower of the Americas", constructed at the San Antonio Hemisfair in 1967, and also described the construction procedure which Fraser believed coincided with and infringed on his patented method.

Basically the Tower of the Americas, at San Antonio, consists of a tower, 622 feet tall, plus a six level tophouse which is itself 70 feet tall, housing a revolving restaurant and observation floors. The topmost floor of the tophouse has an elevation from the ground of 605 feet. The bottom of the tophouse is 535 feet from the ground. The apex of the tophouse is 17 feet from the apex of the tower. The stem or tower of the Tower of the Americas is composed *of fourteen separate reinforced concrete columns.*

The tophouse was constructed on the ground as a single integrated structure,

---

1. Of, relating to, or forming a ring, Webster's Seventh New Collegiate Dictionary (1963).

containing all six levels. It was then hoisted by lifting rods and hydraulic jacks to the top of the tower were it was fitted with floors by pouring concrete into forms incorporated into the steel structure.

The tests to be met in the granting of summary judgments are well known. However, since summary judgments are rarely granted in patent cases the language in Steigleder v. Eberhard Faber Pencil Company, 1 Cir., 1949, 176 F.2d 604, cert. denied, 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548 (1949), is of special significance:

> "Summary judgment under Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A., is sometimes appropriate in a patent case, at least on the issue of infringement. Where it is apparent that there is no genuine issue of fact bearing on infringement, and the structure and mode of operation of the accused device such that they may be readily comprehended by the court, and compared with the invention described and claimed in the patent, without the need of technical explanation by the testimony of expert witnesses, then the court, if satisfied that there is no infringement, should give summary judgment for the defendant, instead of subjecting the parties to the expense of a trial."

## I

### Infringement

■■ We have examined all the evidence that was examined by the district court and we agree with that court that there was no infringement of the Fraser patent. We do so with an awareness of the rule that where, as here, "the findings of infringement are based on inferences drawn from exhibits, documents, and uncontradicted testimony rather than on the conflicting testimony of witnesses whose credibility is for the district court, such findings are fully subject to review", Stewart-Warner Corp. v. Lone Star Gas Company, 5 Cir., 1952, 195 F.2d 645, 647.

The various complaints, answers, and affidavits reflect no really substantial factual dispute either as to the method used in constructing the Tower of the Americas or as to the method described in Claim 1 of appellant's patent. Furthermore, there is no dispute as to any physical appearance or make-up of any part of the two buildings nor as to how any part became situated, as it finally did, in relation to any other part of either of the two buildings. Thus, there remains only a question of law: Did the accused method infringe the patent?

A comparison of the two methods is thus necessary.[2] Claim 1 of the accusing patent describes the "method of constructing a building with hoisting equipment" and specifies "said method comprising the steps" of:

(1) "Constructing a central substantially large single cylindrical core in upstanding relationship from the supporting ground and with said core having access means to the interior of the building".

The tower portion of the Tower of the Americas, *the accused device*, was not singular with respect to construction; it was composed of fourteen separate reinforced concrete columns. The *result* of this composition was, however, substantially like that described in Claim 1 of Fraser's patent. Of more importance, however, is the fact that a "core" and a "tower" are not so much alike that the tower would be an element of infringement. By definition, a core, to be a core, must be central to something which immediately surrounds it. The core described in Fraser's patent is properly *so called*. On the other hand the tower portion of the accused device

---

2. The comparison is necessarily limited to the method disclosed by the patent itself. "The claim of a patent must be read in the light of the invention disclosed and cannot be given a construction broader than the teachings of the patent as shown by the drawings and specifications. United States Industries v. Otis Engineering Corp., 5 Cir., 1958, 254 F.2d 198, 201.

is 622 feet tall with a six level tophouse perched at its apex. 535 feet or more than 86% of the tower is not "the core" but may more correctly be called "the stem" of the edifice.

(2) The next step or element of Claim 1 of appellant's patent is "constructing adjacent the ground and supported therefrom a plurality of substantially annular floors respectively having central substantially circular openings through which said core extends".

The tophouse of the accused device was constructed adjacent the ground by the use of steel members as a single integrated structure containing all six levels, with the stem of the tower protruding through an opening in its middle. The floors of the tophouse were not completed on the ground but only after the tophouse had been hoisted to its position at a minimum of 535 feet from the ground.

(3) The third element of Claim 1 of appellant's patent is "constructing tensile bands respectively around said floors". This step is of little value for comparison purposes. Tensile bands are used to lend strength to the floors of the building and the tophouse of the tower.

(4) The final element of Claim 1 of appellant's patent is "by use of said hoisting equipment, * * * hoisting said floors successively to position said floors in vertically spaced relationship and with the upper one being hoisted first to a position adjacent the top of said core and then on down to the bottom one to a position adjacent the bottom of said core and with the positioning of said floors being such that the distances between adjacent floors are less than the diameter of said cylindrical core".

By lifting rods and hydraulic jacks the tophouse of the Tower of the Americas was *hoisted as a unit* to the top of the tower. Then it was finally fitted with floors by pouring lightweight concrete into forms incorporated into the steel structure.

The indisputable result of the method described in the first claim of the Fraser patent is necessarily that of a building, a multi-storied structure with floors from top to bottom. A building with "floors in vertically spaced relationship and with the upper one being hoisted first to a position adjacent the top of said core and then on down to the bottom one to a position adjacent the bottom of said core".

The self evident result of the construction of the Tower of the Americas is a structure 622 feet tall with a 70 foot tophouse perched within 17 feet of the pinnacle, resulting in that which is properly called a tower. Therefore, it is completely different in appearance and structure.

"[I]t is well settled that infringement exists only when the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation, and results accomplished."

Stewart-Warner Corporation v. Lone Star Gas Company, supra, 195 F.2d at 648.

## II

### *Invalidity*

In its order granting the defendant's motion for summary judgment the trial judge stated that the patent " * * * is not a valid patent".

As indicated at the beginning of this opinion we find it unnecessary either to reach or decide that issue.

We particularly rely on the opinion authored by Judge Learned Hand in Harries v. Air King Products Company, Inc., 2 Cir., 1950, 183 F.2d 158, 162, 163. In that case it was stated:

"We hold that it is open to a court to proceed as is most convenient, subject to the exception that, though the defendant has not infringed, claims may be so evidently invalid that the court should so declare." 183 F.2d 163.

**1222**

Considering the appellate record now before us, the claim at issue in the court below is not "evidently invalid".

We, therefore, follow *Harries*, supra, and see also Svenska Aeroplan Aktiekolaget v. Mergenthaler Linotype Company, 2 Cir., 1969, 410 F.2d 979; Lockwood v. Langendorf United Bakeries, Inc., 9 Cir., 1963, 324 F.2d 82; Dow Chemical Company v. Skinner, 6 Cir., 1952, 197 F.2d 807. Note especially that there was no counterclaim of invalidity in the case now before us as there was in Altvater v. Freeman, 1943, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450.

### III

### *Decision*

The judgment of the District Court holding that Patent No. 3,260,025 was not infringed by the appellees is affirmed.

That part of the judgment below which held that Patent No. 3,260,025 is invalid is remanded to the District Court with directions that it vacate its judgment in that regard.

Affirmed in part, and in part remanded with directions.