**MARVIN GLASS & ASSOCIATES, Plaintiff-Appellant-Cross Appellee,**

v.

**SEARS, ROEBUCK AND COMPANY,
Defendant-Appellee-Cross Appellant.**

**No. 30840.**

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1971.

Dyer, Circuit Judge, did not participate.

Louis T. Pirkey, Tom Arnold, Houston, Tex., James F. Coffee, James R. Sweeney, John R. Hoffman, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., Arnold, White & Durkee, Houston, Tex., for plaintiff-appellant.

Joseph Jaworski, Houston, Tex., Hamer H. Jamieson, Beverly Hills, Cal., Herzig & Walsh, Albert M. Herzig, Thelma S. Herzig, Beverly Hills, Cal., Bracewell & Patterson, Kenneth R. Wynne, Houston, Tex., for defendant-appellee.

Before O'SULLIVAN,* THORNBERRY and DYER,** Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal by Marvin Glass & Associates from the district court's holding that Glass' patent, No. 3,086,297, has

---

* Senior Circuit Judge, 6th Circuit, sitting by designation.

** Judge Dyer did not participate in the decision of this appeal. See 28 U.S.C. § 46(d).

not been infringed by Sears, 318 F. Supp. 1089. Sears cross appeals from the court's holding that the patent is valid. We affirm the finding of non-infringement. It is, therefore, unnecessary to reach the question of validity.

The patented device in issue (hereinafter referred to as the Kay patent)[1] is a talking book, designed for pre-school children. It consists of a suitcase-like box that opens to reveal a book containing a series of simple messages. To the right of and below the pages of the book is a control lever. Underneath the book within the box lies what is essentially a record player. The pages of the book have arrows on their right hand edge which, when matched with an arrow on the lever, permit the user to manually select a verbal message that corresponds to the written intelligence presently appearing in the book. Besides being used to select a particular message, the lever activates the battery-run turntable. On the turntable is a standard disc record. The control lever is connected to a sound pick-up needle and when the lever is shifted the needle is moved laterally between the outside edge and the center of the record to pick up different messages.

The accused device, manufactured by the Mattel Company and marketed by Sears,[2] is also a talking book for very young children and accomplishes the same result as the Kay patent, producing an audible reproduction of the message presently visible on the pages of the book. The district court found non-infringement on two separate independent grounds: First, that the mode of operation of the two books is substantially different; and, second, that the accused book omits certain elements of the Kay patent claims in issue.

The court found substantial difference between the Kay patent, which utilizes an arm containing a sound pick-up needle that moves laterally to a particular spot on the record, and the accused device, on which the needle is stationary and the record is rotated beneath it to select a specific message.

It is well settled that infringement exists only when the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation, and results accomplished.

Stewart-Warner Corp. v. Lone Star Gas Co., 5th Cir. 1952, 195 F.2d 645, 648. *See* Fraser v. City of San Antonio, 5th Cir. 1970, 430 F.2d 1218, 1221; United States Indus. v. Otis Engineering Corp., 5th Cir. 1958, 254 F.2d 198, 204. We agree with the district court that the mode of operation of the Kay patent differs substantially from that of the Mattel book. Moreover, infringement is a question of fact. United States Indus. v. Otis Engineering Corp., *supra* at 200. We may not, therefore, reverse the district court unless its fact finding is clearly erroneous. Fed.R.Civ.P. 52(a). Surely it is not clearly erroneous to say that a device employing a fixed needle beneath which a record is rotated to select a message operates substantially differently from one in which an operating arm is moved laterally to a particular point on the record.

In Stewart-Warner Corp. v. Lone Star Gas Co., 5th Cir. 1952, 195 F.2d 645, 649, this Court said:

In this connection, it is well established that in order to support a suit for infringement of a combination claim such as here, an accused device must embody all the elements of the claim, and omission of a single element avoids infringement.

At issue in the instant case are claims 1, 2, 3 and 9 of the Kay patent,[3] which is clearly a combination patent. The district court found an element of each of these claims missing in the accused device, namely: (1) A single manual control member to shift the pick-up unit; (2) a single sound track with blank

---

1. The patentee of the Glass talking book is Louise A. Kay. Glass purchased the patent from Mrs. Kay.

2. Mattel was dismissed from this case for lack of venue.

3. Pages 63 to 64.

spaces; (3) a circuit breaker or stop means; and (4) an index along an outer peripheral edge. Again, the test is whether the court's fact findings were clearly erroneous. Assessing these findings by reference to the drawings and specifications of the Kay patent rather than solely to the Kay patent claims, as we have concluded we must, we hold that the district court's findings were not clearly erroneous.

The crux of this case is whether the Kay patent is to be protected against any device that comes within the broad literal sweep of its claims or whether infringement is to be found only if the claims when narrowed by reference to the drawings and specifications of the patent can be read upon the accused device. The district court followed the latter course, and we concur.

■■ Appellant argues that the four Kay patent claims can be read literally upon the accused Sears-Mattel book. This conclusion does not, however, even if correct, end our inquiry. Although there is broad language in a brief opinion from another circuit to the effect that allegedly infringing devices should be tested solely by the claims of the patent, American Technical Machine Corp. v. Caparotta, 2nd Cir. 1964, 339 F.2d 557, 560, cert. denied 382 U.S. 842, 86 S.Ct. 65, 15 L.Ed.2d 83 (1965), the rule in this Circuit is that patent claims are only a starting point.

> [T]he claim of a patent must be read in the light of the invention disclosed and cannot be given a construction broader than the teachings of the patent as shown by the drawings and specifications.

United States Indus. v. Otis Engineering Corp., 5th Cir. 1958, 254 F.2d 198, 201; Fraser v. City of San Antonio, 5th Cir. 1970, 430 F.2d 1218, 1220. Moreover, the rule in this Circuit that courts must look beyond the literal meaning of the patent claims is applied even more strictly to combination patents. An inventor is not allowed a broad range of equivalents on a device that employs features that are well known individually in the prior art.

■ We hold, therefore, that the Kay claims, when construed by reference to the drawings and specifications of the patent, reveal a device that differs substantially in mode of operation from the accused device and that includes elements absent from the accused device.

In Sinclair & Carroll Co., Inc. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644 (1945), the Court said that "the better practice" in patent infringement suits "will usually be" to inquire fully into the issue of validity even after a finding of non-infringement has been made. This Court took a similar tack in Beckman Instruments, Inc. v. Chemtronics, Inc., 5th Cir. 1970, 428 F.2d 555. Nevertheless, we followed a different course in Fraser v. City of San Antonio, 5th Cir. 1970, 430 F.2d 1218. There we found non-infringement and thus no necessity to reach the issue of validity. We relied on the rationale of Judge Learned Hand's opinion in Harries v. Air King Products, Inc., 2nd Cir. 1950, 183 F.2d 158, in which the court said:

> The passage [quoted above from *Sinclair*] was not * * * a peremptory direction, but rather * * * a cautionary admonition, to be followed when that is the more convenient course. * * *
>
> *        *        *        *        *        *
>
> We hold that it is open to a court to proceed as is most convenient, subject to the exception that, though the defendant has not infringed, claims may be so evidently invalid that the court should so declare.

■ The Kay patent is not evidently invalid. Moreover, the rationale of *Sinclair* is not present here. Because of the district court's holding, which we affirm, on noninfringement, narrowing the Kay patent claims in light of the drawings and specifications, Glass is not in a position to use the patent to exact tribute from competitors or to foreclose the talking book field from competition.

By its very nature, the Kay patent cannot be infringed by a device not substantially identical to it. We hold, therefore, that on the facts of this case neither precedent nor policy necessitates reaching the issue of validity, which has no bearing on resolution of the controversy between the parties to this suit.

The judgment of the district court holding that Patent No. 3,086,297 was not infringed by appellee is affirmed. That part of the judgment below which held the patent is valid is remanded to the district court with directions that it vacate its judgment in that regard.

Affirmed in part and in part remanded with directions.

### Claim 1

A talking book,

(a) comprising a book having on at least some of its pages intelligence reproduced for sensual observation,

(b) a sound record with a sound track having recorded thereon for audible reproduction intelligence corresponding to that on the pages of the book,

(c) sound reproducing apparatus comprising a pick-up unit for operatively engaging said record,

(d) means for moving the record relative to the pick-up unit to reproduce the intelligence thereon audibly,

(e) means for engaging and disengaging the pick-up unit with the record,

(f) means including a movable control member for shifting said pick-up unit between spaced portions of the sound track without operatively engaging the intermediate portions, so as to bring said pick-up unit selectively into engagement with different parts of the record,

(g) means for supporting said book with one edge of the book adjacent the path of movement of said control member,

(h) said book having an index printed along the corresponding edge of at least some pairs of its facing pages, said index having its positional relationship along said edge coordinated with the positional relationship on the record of the intelligence corresponding to that on the pair of pages so that said control member is effective when aligned with said index to place said pick-up unit in operative engagement with the sound track at a point just preceding the recorded intelligence corresponding to that reproduced on said pair of facing pages.

### Claim 2

A talking book as defined in claim 1,

(a) including an index on the control member matching the indexes printed in the book.

### Claim 3

A talking book,

(a) comprising a book having on at least some of its pages intelligence reproduced for sensual observation,

(b) a sound record with a sound track having recorded thereon for audible reproduction intelligence corresponding to that on the pages of the book,

(c) sound reproducing apparatus comprising a pick-up unit for operatively engaging said record,

(d) means for moving the record relative to the pick-up unit to reproduce the intelligence thereon audibly,

(e) manipulative means for engaging and disengaging the pick-up unit with the record to bring said pick-up unit selectively into engagement with different parts of the record respectively corresponding to the pages of the book,

(f) a casing for said sound reproducing apparatus including means adapted to support said book in open position on said casing,

(g) and means to stop said record at the end of each part.

*Claim 9*

A talking book,

(a) comprising a book having on at least some of its pages intelligence reproduced for sensual observation,

(b) a sound record with a sound track having recorded thereon for audible reproduction intelligence corresponding to that on the pages of the book,

(c) the intelligence corresponding to each page being separated by blank portions of the sound track from the intelligence corresponding to the preceding and following pages,

(d) sound reproducing apparatus comprising a pick-up unit for operatively engaging said record,

(e) means for moving the record relative to the pick-up unit to reproduce the intelligence thereon audibly,

(f) means for engaging and disengaging the pick-up unit with the record,

(g) means for shifting said pick-up unit between spaced portions of the sound track without operatively engaging the intermediate portions, so as to bring said pick-up unit selectively into engagement with different parts of the record,

(h) settable means for operating both said engaging and disengaging means and said shifting means,

(i) and a casing for said sound reproducing apparatus including means adapted to support said book with one edge of the book adjacent the path of movement of said settable means,

(j) said book having an index printed along the corresponding edge of at least some pairs of its facing pages, said index having its positional relationship along said edge coordinated with the positional relationship on the record of the intelligence corresponding to that on the pair of pages so that said settable means is effective when aligned with said index to place said pick-up unit in operative engagement with the sound track in the blank portion preceding the recorded intelligence corresponding to that reproduced on said pair of facing pages

(k) and means to simultaneously start said record moving means to reproduce said corresponding recorded intelligence.