**Joe Doyle BANNING, Plaintiff,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.**

**Civ. A. No. 71–H–1234.**

United States District Court,
S. D. Texas,
Houston Division.

June 5, 1974.

Oscar Nipper, Houston, Tex., for plaintiff.

A. H. Evans, Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., Albert E. Fey, Fish and Neave, New York, N. Y., for defendant.

CARL O. BUE, Jr., District Judge.

## Findings of Facts

1. In this action for alleged patent infringement, the plaintiff seeks damages for past infringement. The patent in suit, Banning patent 2,761,015 entitled PUSH BUTTON TELEPHONE NUMBER SELECTOR (herein referred to as "the Banning patent"), expired August 28, 1973.

2. Plaintiff is Joe Doyle Banning, the patentee and owner of the Banning patent in suit.

3. Defendant is Southwestern Bell Telephone Company, a corporation having an office and a principal place of business in Houston, Texas. In furnishing telephone services in Texas and elsewhere, Southwestern Bell offers to its subscribers telephone sets employing push button dial devices (called "Touch-Tone dials"), which are the devices here challenged as infringements of the Banning patent.

4. This action is brought by plaintiff under the patent laws of the United States (Title 35 U.S.C.); jurisdiction and venue are based on 28 U.S.C. §§ 1338(a) and 1400(b), respectively. This Court's jurisdiction and venue are undisputed with respect to both the parties and the subject matter in this action.

5. The issues framed by the pleadings in this case are whether or not the Banning patent in this suit is valid; and, if valid, whether or not it has been infringed by Southwestern Bell's Touch-Tone dial telephones.

6. Claim 1 of the Banning patent reads as follows:

1. In a telephone number selector, a case including a button receiving bore therein, a cylindrical button adapted to be slidably received within said bore, aligned multiple contacts within the wall of said bore and spaced from each other parallel with the bore axis, and a resilient contact carried by said button and arranged to slidable engage said multiple contacts.

Claim 3 of the Banning patent reads as follows:

In a telephone number selector as defined in Claim 1, the construction wherein said multiple contacts are mounted in a box, and wherein said bore includes a recess in the side thereof for receiving said box.

7. Banning patent 2,761,015 discloses a push button dial device which is intended to be used either as a repertory dialer for dialing a frequently called number with a single stroke of one button, or which may be used as a conventional dialer by successively pushing the buttons numbered "1" through "0" in proper sequence.

8. In the Banning device, a contact pin carried by each button slides along a series of electrical contacts mounted in the wall of the bore in which that button is mounted. The contacts in the wall of the bore are mounted parallel to the axis of the bore. As the button is moved, the contact pin on the button makes electrical connections with the fixed contacts in the bore. By providing the appropriate number of electrical contacts mounted in the wall of the bore, the button is intended to function either as a repertory dialer or as a single numbered button of a sequential dialer.

9. In the challenged Touch-Tone dial, a push button dial mechanism is pro-

vided. The basic structure of this push button dial mechanism is a 3 x 4 matrix of cranks (seven cranks in all) two of which cross beneath each individual button. Electrical contacts (seven sets; one for each crank) are mounted around the periphery of the push button dial device, remote from the push button themselves and from the bores in which they are mounted. Each set of contacts is near the end of, and is actuated by one of the cranks.

When a button is pushed, the two cranks which cross beneath it are rotated as the button moves down. This rotation causes each crank to engage and close the set of electrical contacts which is mounted near the end of that particular crank. The closing of these two sets of electrical contacts (one for each of the cranks which cross beneath a given button) interconnects the two predetermined inductances to the oscillator circuit. When any button is pushed, one of the two cranks which is rotated also moves a slide bar that closes a common switch. This common switch connects power to the oscillator circuit.

.10. *Desplats patent 1,451,328 (Defendant's Exhibit F)* closely resembles Banning's device in bc+h structure and operation. Desplats discloses an electrical signaling device which produces a series of d. c. pulses, such as for Morse Code, in response to the movement of a button up and down within a bore.

Desplats' device has a button which moves in a bore formed in a case. The button carries a resilient spring member which is an electrical contact, and which also urges the button toward its normal "up" position. One end of the resilient spring contact is secured to the base of the device, while its other end is free, and extends toward a non-conductive bracket mounted within the case. The bracket has holes in it with wire contacts interlaced through the holes, so that on one side of the bracket's surface the wires are inlaid and not exposed, while on the other side the wires are exposed to form a series of aligned multiple contacts arranged parallel to the axis of the button bore.

When the button is depressed, the free end of the resilient spring contact, which is carried by the button, slides down the inlaid side of the bracket and no contact is made between it and the interlaced, non-exposed wires. But when the button reaches the bottom of its stroke, the free end of the resilient spring contact moves under the bracket and returns (its speed being controlled by an airtight membrane) along the other side of the bracket where the wires have formed a series of multiple contacts aligned with the button axis. As the resilient contact spring carried by the button slides along these aligned multiple contacts, it generates d. c. pulses whose duration and timing are defined by the spacing of the interlaced wires.

11. *White patent 12,929 (Defendant's Exhibit B)* not cited by the Patent Office, discloses aligned contacts defined by strips of ivory spaced parallel to the bore axis in a d. c. impulse switch used as the key set for a telegraph terminal. Each key corresponds to a designated letter of the alphabet, and each key shaft is an electrically conductive metal bar with non-conductive strips of ivory spaced on its surface parallel to the axis of the bar. One electrical lead of the telegraph circuit is connected to the metallic bar through a sliding contact and plate so that the bar is connected to the circuit lead only during its down stroke. The other circuit lead is connected to a metal wiper spring which engages the lower end of the metal bar.

As the key is depressed, the metal wiper spring traverses the alternate surfaces of metal and ivory thereby producing d. c. impulses whose duration and timing are dependent on the width and spacing of the ivory strips, and which correspond to the dots and dashes for Morse code.

12. *Blake patent 276,216 (Defendant's Exhibit C),* likewise not cited in the Patent Office, also shows aligned

multiple contacts (referred to as conducting strips) mounted within the wall of, and spaced parallel to the axis of, a bore or hole. Blake discloses a switchboard circuit which allows a telephone operator to make multiple connections by moving a rod, which carries a resilient contact spring at one end, in the bore which contains the aligned multiple contacts located between layers of insulation.

One electrical lead of the circuit is connected to the conductive rod and spring. The rod and spring selectively contact one of the conducting layers in the bore and thus connect it into the circuit; the particular connection made depends on the distance the rod is inserted into the bore. In this manner, the telephone operator can select a particular circuit by moving the rod in or out to a point indicated by an indicator.

13. *Wagner patent 2,586,750 (Defendant's Exhibit N)* teaches the basic structural configuration for the Banning device. Wagner discloses an electrical control switch with a cylindrical case having an internal bore and an external surface. A button fitted with a compression spring, slides within the bore and has a conductive collector ring attached to it.

The collector ring is concentric with the button and the cylindrical case, and slides along the external surface of the cylindrical case to make electrical contact with conductive strips of varying length, which are mounted in the external surface of the cylindrical case and spaced circumferentially from each other. The length of the conductive strip determines the time during which the current flows as the bottom is first depressed then released.

14. The four prior art references referred to above show all the elements called for by the claims of the Banning patent. Moreover, the use of push buttons in telephone dial devices is old— Meacham patent 2,410,833 (Defendant's Exhibit J) and Mallina patent 2,147,710 (Defendant's Exhibit H), both owned by the Bell System, are merely exemplary

of literally dozens of push button dialers which were in the art long before Banning came along.

The Desplats prior art reference teaches a device which includes every single feature of Banning's claim—except the mounting of the multiple contacts actually within the walls of the button-receiving bore instead of next to it. The Blake prior art reference shows this feature and both the Blake and Desplats patents, like the Banning patent in suit, relate to the communications art.

15. The narrow difference between the Banning patent in suit and the Desplats prior art patent would have been obvious to a person of ordinary skill in the telephony art in 1953 when Banning made his alleged invention. The obviousness of the Banning device is manifest in view of the trifling differences between it and the prior art.

16. The Banning patent is a combination of previously known elements.

17. The duration and timing of dial impulses in a dialing device emitting sequential electrical impulses are critically important. To make the dial pulses comprehensible to switching equipment at telephone central offices, the dial speed is controlled to 10 $\pm 0.5$ pulses per second by a governor that maintains the dial's rotation at a constant speed. The make-break time ratio of each pulse is also critical. A device that is not able to satisfy these exacting requirements is useless as a telephone dialing device.

18. No element of the Banning patent provides the speed control necessary to send a sequential electrical impulse that is comprehensible to telephone switching equipment. Such inherent speed retardation as might be created by the frictional engagement of the button sliding in the bore of the Banning device could not provide the degree of precision timing required by a standard telephone switching system. There is no evidence that speed control could be developed in the Banning device.

19. The length of the bore of the Banning patent necessary for the elec-

trical contacts required to provide sequential electrical impulses of sufficient number and duration would be ten to twelve inches. A telephone set capable of containing a bore of that length would have no practical application.

20. Although the drawings and specifications of the Banning patent indicate that it is designed to produce sequential electrical impulses, the claims of the patented device do not limit its use to that type of signal. Accordingly, the device could be used to emit voice-frequency tones through the use of electrical connections between the device and an oscillator.

21. Although speed control may not be critical in a dialing device emitting signals defined by tone as opposed to impulse, no element capable of producing voice-frequency tones existed in a form susceptible to practicable application at the time that the Banning patent was granted.

22. The Banning patent is a "paper" patent in that the device disclosed and claimed in it has never been commercially exploited by Banning or by anybody else.

23. Although the word "contacts" within Claim 1 is undefined, reference to the specifications and drawings accompanying the patent indicates that the real invention protected by the patent embodies electrical contacts. Accordingly, the disclosure of electrical, as opposed to mechanical, contacts describes the specific invention involved and does not constitute merely a preferred embodiment of the Banning claim.

24. Claim 1 of the application for the Banning patent (Defendant's Exhibit A) did not require that the aligned multiple contacts be mounted in the wall of the push-button bore, nor did it require that the aligned multiple contacts be spaced parallel with the bore axis. This claim was rejected by the Patent Examiner on May 10, 1954, and it was cancelled and abandoned by Banning on November 10, 1954. After stressing these limitations in Claim 2 of the application,

that claim was accepted as Claim 1 of the Banning patent.

25. The Touch-Tone dial has no aligned multiple contacts within the wall of the button bore which are spaced from each other parallel with the bore axis. Any contacts within the bore of the Touch-Tone dial are spaced perpendicular to the bore axis.

26. The Touch-Tone dial has no electrical contacts mounted within the wall of the bore. Rather, it operates through mechanical contact, with any electrical contact placed on the periphery of the assembly with no proximity to the button bore.

27. The Touch-Tone dial has no resilient contact *carried* by its buttons nor does it have any equivalent device. Rather, its buttons are unitary members that provide direct contact rather than indirect contact by virtue of a separate member.

28. The three preceding elements of the Banning patent required by Claim 1 are not found in defendant's allegedly infringing Touch-Tone dials.

29. The mode of operation and structure of the Touch-Tone dial are not identical to that of the Banning device.

### Conclusions of Law

1. Under Title 28 U.S.C. § 1338(a), this Court has exclusive subject matter jurisdiction over this matter, which arises under the Patent Statutes of the United States. Venue is properly laid in this District under 28 U.S.C. § 1400(b) in that defendant has a regular and established place of business here, and acts charged as infringements (use of the Touch-Tone dial) have taken place within this District.

2. Plaintiff Joe Doyle Banning is owner of the Banning patent in suit and has standing to bring and maintain this action.

### Validity of the Patent

3. 35 U.S.C. § 282 establishes a presumption of validity for a patent regularly issued by the Patent Office. This

presumption is rebuttable, although the challenger bears a heavy burden of proof. Ingersoll-Rand Co. v. Brunner & Lay, Inc., 474 F.2d 491, 496 (5th Cir.), cert. denied, 414 U.S. 865, 94 S.Ct. 125, 38 L.Ed.2d 117 (1973). A challenger's burden of proof is lessened when evidence of important prior art not considered by the Patent Office is presented. Beckman Instruments, Inc. v. Chemtronics, Inc., 439 F.2d 1369, 1374–1375 (5th Cir.), cert. denied, 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970).

4. The Banning patent is invalid in that the difference between the prior art and the claims of the Banning patent would have been obvious to one of ordinary skill in the art of telephony at the time Banning's alleged invention was made. See 35 U.S.C. § 103; Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

5. A combination of old elements is patentable if it produces a new and different function previously unperformed by them. Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Ramirez v. Perez, 457 F.2d 267, 270 (5th Cir. 1972); Railex Corporation v. Speed Check Co., 457 F.2d 1040, 1048 (5th Cir.), cert. denied, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972).

6. The Banning patent is directed to a combination of old elements that produces no new result and exhibits no synergistic effect. It is invalid because it lacks novelty. See 35 U.S.C. § 101.

7. A patentable invention must be useful. See 35 U.S.C. §§ 101, 112. A patented invention is useful if it is capable of performing a beneficial function claimed for it. Smith v. Nichols, 88 U. S. 112, 21 Wall. 112, 22 L.Ed. 566 (1875); Seymour v. Osborne, 78 U.S. 516, 11 Wall. 516, 20 L.Ed. 33 (1871); Amphenol Corp. v. General Time Corp., 397 F.2d 431, 438 (7th Cir. 1968); Dart Industries v. E. I. Dupont DeNemours & Co., 348 F.Supp. 1338 (N.D.Ill.1972); Panduit Corp. v. Stahlin Bros. Fibre

Works, Inc., 298 F.Supp. 435, 442 (W. D.Mich.1969), aff'd, 430 F.2d 221 (6th Cir. 1970); 1 Walker on Patents § 86 (Deller's 2d ed. 1964).

8. Although it is not necessary that a patented invention function flawlessly in all situations to be considered useful, Eastern Rotorcraft Corp. v. United States, 384 F.2d 429, 431, 181 Ct.Cl. 299 (1967); Curtiss-Wright Corp. v. Link Aviation, Inc., 182 F.Supp. 106, 123 (N.D.N.Y.1959), it is necessary that the device be capable of a practical application in industry. See General Steel Products Co. v. Lorenz, 204 F.Supp. 518, 523 (S.D.Fla.1962), aff'd 337 F.2d 726 (5th Cir. 1964); Lorenz v. Berkline Corp., 215 F.Supp. 869, 880 (N.D.Ill. 1963). If a device can be made operative by adjustments and corrections that would be obvious to a person skilled in the art and that would not require the exercise of any inventive faculty, the patent is not inoperative. See Bennett v. Halahan, 285 F.2d 807, 811, 48 C.C.P. A. 782 (1961); 1 Walker on Patents § 95 (Deller's 2d ed. 1964). See also Lorenz v. General Steel Products Co., 337 F.2d 726, 727 (5th Cir. 1964).

9. Utility must be determined as of the date of the invention. Curtiss-Wright Corp. v. Link Aviation, Inc., supra.

10. The Banning patent is invalid for lack of utility. The length of the bore necessary for the number of electrical contacts to provide signals of sufficient number and duration would make the device impractical. Furthermore, the Banning patent is inoperative because it lacks a speed control other than the friction provided by the button and the bore. Although speed control would not be necessary if the Banning device was used to produce tone signals as opposed to direct impulse signals, no tone-producing device capable of practical application in the industry was available at the time of the invention.

*Infringement*

11. Infringement requires identity of structure, mode of operation and

results accomplished. *See, e. g.*, Ziegler v. Phillips Petroleum Co., 483 F.2d 858, 868 (5th Cir. 1973); Harrington Manufacturing Co., Inc. v. White, 475 F.2d 788, 796 (5th Cir. 1973), cert. denied, 414 U.S. 1040, 94 S.Ct. 542, 38 L.Ed.2d 331 (1973); Marvin Glass & Associates v. Sears, Roebuck and Company, 448 F. 2d 60, 61 (5th Cir. 1971); Fraser v. City of San Antonio, Texas, 430 F.2d 1218, 1221 (5th Cir. 1970); Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., 431 F.2d 539, 543 (5th Cir. 1970), cert. denied, 401 U.S. 909, 91 S. Ct. 869, 27 L.Ed.2d 807 (1971).

■ 12. Combination patents are strictly confined to the particular combination claimed and the doctrine of equivalents is applied narrowly. Hughes v. Magnolia Petroleum Co., 88 F.2d 817 (5th Cir. 1937); Sisko v. Southern Resin & Fiberglass Corporation, 248 F. Supp. 797 (S.D.Fla.1965), aff'd, 373 F. 2d 866, cert. denied, 389 U.S. 824, 88 S. Ct. 60, 19 L.Ed.2d 78 (1967).

■ 13. It is essential in a combination claim that all elements of the claim be embodied in the infringing device. Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L. Ed.2d 273 (1972); Marvin Glass & Associates v. Sears, Roebuck and Company, *supra*, 448 F.2d at 61; Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., *supra*, 431 F.2d at 544; Stewart-Warner Corp. v. Lone Star Gas Co., 195 F.2d 645, 649 (5th Cir. 1952). ⁕

■ 14. Although the claims, rather than the specifications and drawings, delineate the scope of the patent, Edward Valves, Inc. v. Cameron Iron Works, Inc., 286 F.2d 933, 942 (5th Cir.), cert. denied, 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 34 (1961), a claim is construed by reference to its specifications and drawings in an effort to ascertain the real invention. *See* Ziegler v. Phillips Petroleum Co., *supra*, 483 F.2d at 869; Marvin Glass & Associates v. Sears, Roebuck & Company, *supra*, 448 F.2d at 62; Fraser v. City of San Antonio, Texas, *supra*, 430 F.2d at 1220.

■ 15. When the device described and claimed in a patent has never been constructed or commercially exploited, the patent is a "paper" patent, and as such it is entitled to only a very narrow construction. *E. g.*, Lockwood v. Langendorf United Bakeries, Inc., 324 F.2d 82, 88 (9th Cir. 1963); Richard Irvin & Co. v. Westinghouse Air Brake Co., 121 F.2d 429, 430 (2d Cir. 1941); Dillon Co. v. Continental Supply Co., 98 F.2d 581, 587 (10th Cir. 1938).

■ 16. When an applicant limits his patent claims to induce the Patent Examiner to allow them over the prior art, he cannot thereafter try to recapture those limitations by seeking a broader construction of his claim through the doctrine of equivalents. This is the doctrine of file wrapper estoppel. Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Schriber Co. v. Cleveland Trust Co., 311 U.S. 211, 220–221, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Ziegler v. Phillips Petroleum Co., 483 F.2d 858, 870 (5th Cir. 1973); Rosen v. Kahlenberg, 474 F.2d 858, 867 (5th Cir. 1973).

■ 17. File wrapper estoppel does not require that limitations be inserted into the claims by amendment. It operates equally against narrow claims which are accepted after broader claims are rejected and abandoned, Smith v. Magic City Club, 282 U.S. 784, 788–789, 51 S.Ct. 291, 75 L.Ed. 707 (1931); Houston Engineers, Inc. v. Bowen-Itco, Inc., 310 F.2d 522, 526 (5th Cir. 1962); Ziegler v. Phillips Petroleum Co., *supra*.

■ 18. Plaintiff is estopped, by the doctrine of file wrapper estoppel, from claiming that the Touch-Tone dial contains the equivalent of aligned multiple contacts mounted in the wall of bore and spaced from each other parallel with the bore axis.

■ 19. Claim 1 of the Banning patent is not infringed because three elements of the combination claim are not included in the Touch-Tone dial.

■ 20. Claim 1 of the Banning patent is not infringed because the mode

of operation and structure of the Touch-Tone dial are not identical to that of the Banning device, when the claim is read literally or by virtue of the doctrine of equivalents.

21. Claim 3 is a dependent claim by virtue of its incorporation by reference of Claim 1. *See* Lundy Electronics & Systems, Inc. v. Optical Recognition Systems, Inc., 362 F.Supp. 130 (E.D.Va.1973). Accordingly, because Claim 1 of the patent is not infringed, Claim 3 is likewise not infringed. *See* 35 U.S.C. § 112.

22. Plaintiff Joe Doyle Banning is not entitled to recover from the Defendant Southwestern Bell Telephone Company.

23. Defendant Southwestern Bell Telephone Company is entitled to recover its costs herein from the plaintiff.

24. In the event that any of the foregoing Findings of Fact also constitute Conclusions of Law, they are also adopted as Conclusions of Law. In the event that any of the foregoing Conclusions of Law also constitute Findings of Fact, they are also adopted as Findings of Fact.